UNITED STATES of America,
Plaintiff–Appellee,

v.

Leo Orlando MUNIZ, Defendant–Appellant.

No. 92–2192.

United States Court of Appeals,
Tenth Circuit.

July 22, 1993.

David N. Williams, Senior Litigation Counsel, Albuquerque, NM (Don J. Svet, U.S. Atty., with him on brief) for plaintiff-appellee.

Joseph W. Gandert, Asst. Public Defender, Albuquerque, NM, for defendant-appellant.

McKAY, Chief Circuit Judge, WOOD, Jr., Senior Circuit Judge,* and ANDERSON, Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Defendant Leo Orlando Muniz appeals his conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Muniz was indicted on January 9, 1992, on two separate counts. After a three-day jury trial, the jury found him guilty on one count and acquitted him on the other count.

Muniz raises five issues. He first appeals the district court's refusal to suppress statements he allegedly made in violation of his Fifth Amendment right not to incriminate himself. Secondly, he argues the court abused its discretion in failing to sever the two counts for trial. Thirdly, he claims the court abused its discretion by refusing to hold an evidentiary hearing on his claim that excessive pre-indictment and post-indictment delays violated his due process and speedy trial rights. Fourthly, Muniz believes his right of allocution at sentencing was denied. Finally, Muniz argues the court erred in denying his motion to dismiss the indictment because the United States allegedly violated the Interstate Agreement on Detainers Act by delaying his trial.

## I. BACKGROUND

The counts involved two separate guns and two separate dates. The first count, the one on which Muniz was acquitted, charged that Muniz possessed a .22 caliber gun on January 6, 1991. A police officer testified that in the early morning of January 6, 1991, when she was investigating an alleged shooting at a residence in Albuquerque, New Mexico, she stopped Muniz outside near the residence. After hearing something metallic hit the ground, she found a .22 caliber gun where Muniz had been standing. A police field investigator also testified that Muniz's hands had trace metals on them indicating he had been near ammunition or had fired a gun. Additional testimony was given by a witness at the residence that she thought she saw Muniz with a gun earlier that evening.

The second count charged Muniz with possession of a .45 caliber gun on May 13, 1991. Muniz had been arrested on January 6, 1991, for state charges of aggravated assault and felon in possession of a firearm because of the above shooting incident but was mistakenly released from custody on May 13, 1991. When released from jail on May 13, Muniz went to his sister's apartment with one of his brothers and a friend. After a brief visit, Muniz left the apartment and went drinking with his friends.

Muniz's sister testified that Muniz returned to her apartment around 11:00 p.m. that evening visibly drunk and threatened her with a gun. Muniz displayed the gun which he loaded and unloaded repeatedly. Her children and another brother were also at the apartment. She testified that Muniz told her it was a .45 caliber gun and that one of the bullets had her name on it. Muniz left the apartment when he chased after his brother who had just fled the apartment. Muniz's sister called the police but by the time they responded, Muniz was no longer around.

A few hours later, Muniz returned to his sister's apartment and broke into it. His sister and brother escaped out windows in the back, the children having been sent to a neighbor's after the 11:00 p.m. visit. Again the police were called, and this time when they arrived, Muniz was still in the apartment. The gun was not then in his posses-

---

* Honorable Harlington Wood, Jr., United States Senior Circuit Judge for the Seventh Circuit, sitting by designation.

sion; it was later found outside the apartment.

County police officers arrested Muniz and gave him his *Miranda* warnings. Muniz did not appear to listen to the warnings because he was cursing and yelling at the advising officer. While being transported to the local detention center, Muniz boasted that he had hidden the .45 caliber gun. Muniz stated that he would be able to work out a plea and be in jail for only a few months.[1] Muniz repeated this while at a hospital receiving medical attention for a wound on his ear. Medical examiners at the hospital tested Muniz's blood alcohol level and found his blood alcohol level was .268. The legal limit of intoxication for driving offenses in New Mexico is .1.

Muniz was in state custody after his arrest on May 14, 1991, for aggravated assault and breaking and entering. The federal grand jury indictment followed. The United States Marshals Service filed a detainer on January 13, 1992, for Muniz who was still in state custody.[2] The United States obtained a writ of habeas corpus for Muniz which was executed on March 12, 1992, when Muniz was arraigned in federal district court. The trial began on June 1, 1992, and the jury found Muniz guilty only of the May 13 possession.

## II. ANALYSIS

### A. *Suppression of Statements*

Muniz moved to suppress statements he made to police officers following his arrest in the early morning of May 14, 1991. The district court denied his motion after a suppression hearing held on May 28, 1992. The court found nothing in the evidence to reflect that Muniz was interrogated by the police nor held in coercive circumstances.

██ We review the court's decision and determination of the ultimate issue of volun-

tariness *de novo. Davis v. North Carolina,* 384 U.S. 737, 742, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895 (1966); *United States v. Chalan,* 812 F.2d 1302, 1307 (10th Cir.1987), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988). "But the trial court's rulings with regard to subsidiary factual questions, such as whether the police intimidated or threatened a suspect or whether the suspect was particularly susceptible to police coercion, are subject to review under the clearly erroneous standard." *Chalan,* 812 F.2d at 1307–08. The entire record is considered on appeal which includes evidence at the suppression hearing as well as at trial. *United States v. Basey,* 816 F.2d 980 (5th Cir.1987); *United States v. Smith,* 527 F.2d 692, 694 (10th Cir.1975) (on appeal may consider evidence from suppression hearing and trial).

Muniz argues the district court incorrectly placed the burden of proof on him at the suppression hearing rather than on the government. The government concedes that the court was mistaken when it concluded the hearing by stating: "It is the burden upon the defendant to state or prove by a preponderance of the evidence that his statements were not voluntary or they were made in response to coercive questioning." (R. at 50, vol. III.) Because the court stated the wrong legal standard, Muniz argues the clearly erroneous standard for factual findings is inapplicable citing *United States v. Finefrock,* 668 F.2d 1168 (10th Cir.1982).

██ It is unclear from the record, however, whether the court actually did apply the wrong standard. The burden of proof is on the government to prove the statements were voluntary. *Colorado v. Connelly,* 479 U.S. 157, 168–69, 107 S.Ct. 515, 522–23, 93 L.Ed.2d 473 (1986); *United States v. Slater,* 971 F.2d 626, 637 (10th Cir.1992). Which standard the court used is unclear because the court began the suppression hearing by

---

1. Instead Muniz has been in custody since May 14, 1991, and was sentenced to 300 hundred months imprisonment by the district court for possessing the .45 caliber gun.

2. The detainer is dated January 13, 199*1*, which apparently is a typographic error since a receipt stamp on the detainer is dated January 13, 1992. But neither of the parties in their briefs or in

district court acknowledged this error, if it is one, and both parties use different years in their briefs. The defendant asserted his speedy trial rights in a notification form for the detainer dated January 13, 1992, but this form refers to the detainer filed on January 13, 199*1* which adds to the confusion.

**1022**

stating: "This matter comes on for a hearing on the defendant's motion to suppress, and under the submissions, I believe the Government has the burden." (R. at 2, vol. III.) Nevertheless, under either standard, it is clear from the record that the district court had no doubts concerning the voluntariness of the statements, and whether the defendant had been interrogated. The judge concluded: "There's nothing in the record to reflect that he was in fact interrogated, and ... the Court finds that the statements were knowingly and voluntarily made." (*Id.*) Because we readily agree with the district court that the statements were voluntarily given, we affirm the denial of the defendant's motion. Cf. *Finefrock,* 668 F.2d at 1171 (appellate court could not resolve suppression issue when district judge had applied incorrect legal standard and indicated the case was a close one).

Muniz asserts the court erred by not suppressing his statements because they were not voluntarily given and were only made in response to direct questioning by police officers asking, "Where's the gun?" Muniz also argues he did not knowingly waive his *Miranda* rights when arrested at his sister's apartment.

 The Fifth Amendment does not bar the admission of volunteered statements which are freely given. *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966). If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible. *See United States v. Thoma,* 726 F.2d 1191, 1197–98 (7th Cir.), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984).

 The police officer testified that he did not ask the defendant any questions when he brought the defendant to the detention center. The district court found that the transporting officer did not interrogate the defendant, and the defendant volunteered the statements that he had hidden the .45 caliber gun he had used to threaten his sister. The

only contradictory evidence concerning the possible interrogation of the defendant was Muniz's own testimony at trial. Muniz, who did not testify at the suppression hearing, testified the officers repeatedly asked him where the gun was.

 The issue of voluntariness is determined by the totality of the circumstances, considering the characteristics of the accused including among other things his or her age or lack of education or intelligence and details of the circumstances like any advice of a person's constitutional rights or the length of detention or prolonged questioning. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). The state of intoxication does not automatically render a statement involuntary. *United States v. Casal,* 915 F.2d 1225, 1229 (8th Cir.1990), *cert. denied,* 499 U.S. 941, 111 S.Ct. 1400, 113 L.Ed.2d 455 (1991). The test is whether the person's will was overcome, or whether the statement was freely made. *Id.*

Based on our independent review of the entire record, we agree with the district court that Muniz's statements about the hidden gun were volunteered and were not the result of police interrogation. The officers did not interrogate the defendant after he was taken into custody, and there were no threats or physical abuse of any kind. Moreover the record does not show how Muniz's intoxicated state rendered him unable to voluntarily speak. Because we believe Muniz's statements were freely made, it does not matter that he did not acknowledge nor waive his *Miranda* rights. *See Thoma,* 726 F.2d at 1197–98. Instead, the fact that he was given *Miranda* warnings at all could help show that his decision to talk was of his own free will when combined with his own ample prior experience with criminal law.[3]

### B. *Severance of the Two Counts*

 Before trial, Muniz moved to sever the two counts because he says they were unfairly and prejudicially joined. These two counts were properly joined under Federal

---

3. Muniz was subject to enhanced penalty provisions under 18 U.S.C. § 924(e)(1) because he had three previous violent felony convictions.

Rule of Criminal Procedure 8(a) which allows for the joinder of two or more offenses if they "are of the same or similar character." *See United States v. Lindsey,* 782 F.2d 116 (8th Cir.1986) (per curiam) (joinder of two counts of felon in possession of a firearm properly joined). But the district court may sever counts which are properly joined if it appears the defendant is prejudiced by their joinder. Fed.R.Crim.P. 14. The district court, however, denied Muniz's severance motion, and we will not disturb this decision absent an abuse of discretion. *United States v. Hernandez,* 829 F.2d 988, 990 (10th Cir. 1987), *cert. denied,* 485 U.S. 1013, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988); *United States v. Dickey,* 736 F.2d 571, 589 (10th Cir.1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985).

The defendant bears a heavy burden of showing real prejudice from the joinder of the two counts. *Dickey,* 736 F.2d at 589. When joinder of offenses is based upon their "same or similar character," the prejudice to the defendant is more likely since proof of one crime may tend to corroborate the commission of the other crime in violation of the evidentiary rules against evidence of a general criminal disposition or propensity to commit crime. 8 James W. Moore, *Moore's Federal Practice* ¶ 14.03[1] (2d ed. 1991). Particularly since economizing judicial resources is not of great significance when the offenses were on different dates with different witness.

Muniz argues he was prejudiced because the jury may have cumulated the evidence against him in order to convict him on the second count. Specifically he claims the evidence of the trace metals on his hand on January 6, 1991, and his association with certain people used in the first count prejudiced him in the second count. He claims the jury and a witness were confused by the joinder because of the different guns charged in the indictment and identified by witnesses. Muniz's sister, a key witness on the second count, believed the gun that the defendant threatened her with looked more like the gun identified for the first count. Additionally, the jury sent a note to the judge in the middle of the trial asking about a .25 caliber gun mentioned by a witness for proof of the first count.

Muniz's prejudice argument is unconvincing, and the district court's denial of his motion was not an abuse of discretion. The two counts were separate and distinct, and the evidence presented at trial was not too confusing or unfairly overlapping. The offenses took place on different dates at different locations, and different witnesses and evidence were presented on each count. *See Drew v. United States,* 331 F.2d 85, 92–93 (D.C.Cir.1964) (confusion resulted from similarity of the two offenses because both were committed in same way and at stores with the same name). Muniz testified in his own defense concerning both counts and can not claim any infringement of his Fifth Amendment right not to testify. *Hernandez,* 829 F.2d at 991; *Dickey,* 736 F.2d at 590. There was no unfair prejudice from proof that he was a convicted felon since it was an element for both counts. *See United States v. Valentine,* 706 F.2d 282, 290 (10th Cir.1983). Moreover, the case for each count was strong enough on its own. The government was not attempting to strengthen a weak case by joining it with a strong case. Muniz's prejudice argument is not helped by the fact that the jury acquitted him on one of the counts.

### C. *Pre–Indictment and Post–Indictment Delay*

Muniz moved to dismiss the indictment prior to trial alleging his due process rights to be free of prejudicial preindictment delay were violated along with his Sixth Amendment right to a speedy trial. The government opposed the motion which the district court denied on May 6, 1992. Muniz relies upon *United States v. Stoddart,* 574 F.2d 1050 (1978), and *United States v. Revada,* 574 F.2d 1047 (10th Cir.1978), and argues the court abused its discretion when it improperly denied his motion without even conducting an evidentiary hearing to resolve factual allegations.

The offenses with which the defendant was charged occurred on January 6, 1991, and March 13, 1991, and the defendant was indicted on federal charges on January 9, 1992. Muniz argues this delay in indictment was

intentional because he lost contact with two witnesses he needed for his defense. The government explained the delay was due to the slow exchange of investigative reports between the state authorities who arrested Muniz and the federal agent handling the case.

■ The district court was not required to hold an evidentiary hearing in order to rule on the pre-indictment delay allegation. As the Supreme Court recognized in *United States v. Lovasco*, 431 U.S. 783, 795, 97 S.Ct. 2044, 2051, 52 L.Ed.2d 752 (1977), "investigative delay is fundamentally unlike delay taken by the Government solely 'to gain tactical advantage over the accused'" and does not deprive a defendant of due process. *Id.* Muniz made no specific allegations how the government had intentionally delayed seeking an indictment in order to prejudice the defendant. *See Gutierrez v. Moriarty*, 922 F.2d 1464, 1472 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 140, 116 L.Ed.2d 106 (1991); *United States v. Pino*, 708 F.2d 523, 527 (10th Cir.1983). Nor did Muniz specifically allege why the passage of time caused him to lose contact with the two witnesses. *See Gutierrez*, 922 F.2d at 1472. In fact, one of the witnesses did appear at trial, and the other is his own brother. The government adequately explained the reason for the admittedly "modest delay" so that the district court could deny the motion after reviewing the memoranda submitted by both parties.

■ The other ground for the defendant's motion to dismiss was based upon a violation of his Sixth Amendment right to a speedy trial. Muniz argues his speedy trial right attached on January 6, 1991, and May 14, 1991, when he was first arrested for the offenses. The government argues the right did not attach until Muniz was arrested by way of the execution of the writ of habeas corpus on March 12, 1992.

Muniz's speedy trial claim is evaluated under the four-part balancing test adopted by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The four factors are the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id.* at 530, 92 S.Ct. at

2192. The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, depending on which comes first. *See United States v. Marion*, 404 U.S. 307, 320–21, 92 S.Ct. 455, 463–64, 30 L.Ed.2d 468 (1971).

When Muniz was arrested by state authorities on January 6, 1991, and May 14, 1991, his speedy trial rights for the subsequent federal charges did not attach. "Where the initial arrest is solely for violation of state law, then it is generally accepted that this arrest does not mark the commencement of the speedy trial right as to a subsequent federal charge, even if based on the same activity." 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 18.1 (1984 & Supp.1991); *see United States v. MacDonald*, 456 U.S. 1, 10 n. 11, 102 S.Ct. 1497, 1503 n. 11, 71 L.Ed.2d 696 (1982) ("an arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign").

■ Assuming for purposes of this appeal that Muniz's speedy trial rights attached when the federal indictment was returned on January 9, 1992, and not when the writ of habeas corpus was executed as the government asserts, we do not find any violation of Muniz's speedy trial rights. The trial was less than five months after the indictment was returned. This a reasonable amount of time and not presumptively prejudicial. Muniz has also not shown any deliberate intention on the government's part to delay trial in order to prejudice his defense. Nor has he shown what prejudice he actually suffered with the passage of time. Again, one of the previously named witnesses did testify at trial, and there is no proof why the defendant was unable to locate the second witness.

### D. *Right to Allocution*

■ Muniz argues the district court denied him his right to allocution when he was sentenced because the judge interrupted Muniz when Muniz began, "First of all, in the beginning of this case." (R. at 385, vol. V.) The judge said to Muniz, "I don't want to

hear anything about the case. I heard the case ... You're not going to re-argue the case to the Court. Do you have anything else to say?" (*Id.*) Muniz did have more to say, and the allocution continued:

"MR. MUNIZ: Yes sir, I feel that in my case the detainer issue, the United States detainer issue has been violated. My speedy trial—my constitutional right to a Sixth Amendment speedy trial has been violated, due process of law. There was a coercion of witnesses in my case by police officers.

THE COURT: Well, Mr. Muniz, this is not the place for that. You can raise those issues on appeal.

MR. MUNIZ: But other than for myself personally, I was put in the situation where I can feel that my life was threatened. As a convicted felon, I don't believe that it's fair that a person should give up their right to protect themselves. I don't feel that a person should allow anybody to intimidate them or to threaten friends of witnesses that could possibly help. I don't think that it's fair that the Government itself doesn't provide enough money to pay out of his own pockets to get transcripts of several things. And overall, I just don't— in the due process of my case, I don't feel that justice was served.

THE COURT: Do you have anything else?

MR. MUNIZ: Just other than that I apologize. I apologize that things are the way they are.

THE COURT: All right."

(*Id.* at 385–86.)

■ The right to allocution is an integral part of the sentencing process which if not fully afforded to the defendant requires a reversal of the sentence imposed. *Green v. United States*, 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961); *United States v. Latimer*, 548 F.2d 311, 315 (10th Cir.1977). The sentencing court must "address the defendant personally and determine if the defendant wishes to make a statement and to present any information in the mitigation of the sentence." Fed.R.Crim.P. 32(a)(1)(C).

The right of allocution, however, is not one without some limits. *See United States v.*

*Eibler*, 991 F.2d 1350, 1356 (7th Cir.1993) (defendant may not as of right privately address the court); *United States v. Kellogg*, 955 F.2d 1244, 1250 (9th Cir.1992) (right not violated when court interrupted defendant and proposed a recess). Most often the cases concern whether the defendant was given a chance to speak at all. Yet Muniz argues he was not allowed to speak enough since the district judge told the defendant, "I don't want to hear anything about the case ... You're not going to re-argue the case."

The judge did not unfairly prevent Muniz from speaking because the judge does not have to let the defendant re-argue the case at sentencing. Moreover, the judge allowed the defendant to seek to mitigate his sentence by speaking about how he possessed the gun in self-defense and how some potential witnesses had been prevented from testifying. The judge also asked the defendant if he had anything else to say when he was finished. Therefore, while we agree that "[t]he right of allocution is minimally invasive of the sentencing proceeding," and "the requirement of providing the defendant a few moments of court time is slight," *United States v. Barnes*, 948 F.2d 325, 331 (7th Cir.1991), we believe the defendant had adequate opportunity under the circumstances to speak on his own behalf.

### E. *The Interstate Agreement on Detainers Act*

■ Muniz argues that because the government failed to begin his federal trial within the 120–day requirement of the Interstate Agreement on Detainers Act ("IAD"), 18 U.S.C. app. 2, § 2, art. IV(c), the indictment should be dismissed. We disagree for the simple reason that the provisions of the IAD do not apply to pretrial detainees.

In *United States v. Wilson*, 719 F.2d 1491 (10th Cir.1983), this court held the terms of article III(a) of the IAD did not come into play until a person is actually sentenced and imprisoned in state custody. *Id.* at 1495. In *Wilson* the 180–day requirement of article III did not begin when the person had a detainer filed against him by the United States Marshal while in state custody and before any guilty pleas or convictions had

been entered on the state charges. *Id.* Articles III and IV apply to prisoners who are serving a "term of imprisonment" in a state party to the IAD, and therefore *Wilson* forecloses any other interpretation of the time when the provisions of the IAD apply. According to the record, Muniz was not serving a term of imprisonment on any state charges before his federal trial began; the IAD can provide no relief for him. Several other courts have similarly held that the IAD does not apply to pretrial detainees. *See United States v. Currier*, 836 F.2d 11, 16 (1st Cir. 1987); *United States v. Reed*, 620 F.2d 709, 711 (9th Cir.), *cert. denied*, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980); *United States v. Harris*, 566 F.2d 610, 613 (8th Cir.1977); *United States v. Roberts*, 548 F.2d 665, 671 (6th Cir.), *cert. denied*, 431 U.S. 920, 97 S.Ct. 2188, 53 L.Ed.2d 232 (1977).

## III. CONCLUSION

Finding no error on the part of the district court, we affirm Muniz's conviction.

AFFIRMED.