**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 5 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MOUNIR NAFKHA,

    Defendant-Appellant,

-----------------------------------------------

WASHINGTON LEGAL
FOUNDATION; AMERICANS FOR
EFFECTIVE LAW ENFORCEMENT;
INTERNATIONAL ASSOCIATION
OF CHIEFS OF POLICE; CITIZENS
FOR LAW AND ORDER; JUSTICE
FOR ALL; LAW ENFORCEMENT
ALLIANCE OF AMERICA; SAFE
STREETS COALITION; CRIMINAL
JUSTICE LEGAL FOUNDATION,

    Amici Curiae.

No. 96-4130
(District of Utah)
(D.C. No. 95-CR-220C)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY**, and **HENRY**, Circuit Judges.

---

    [*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Mounir Nafkha was convicted on five counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d); four counts of carrying and using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); and two counts of possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g). The charges against Mr. Nafkha stemmed from a series of five bank robberies in the Salt Lake City area.

After his arrest, Mr. Nafkha was interrogated by FBI Special Agent Michael S. Rankin and Salt Lake City Police Detective David Glen Timmerman. On appeal, Mr. Nafkha argues that (1) the confession obtained from that interrogation was involuntary and inadmissible at trial; (2) the five bank robbery counts were impermissibly joined in one indictment, and the felon-in-possession counts should not have been joined with the other counts; and (3) the district court failed to take proper corrective action after admitting prejudicial and inadmissible hearsay. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## DISCUSSION

### I. Confession

Mr. Nafkha contends that his confession was involuntary and inadmissible under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and related cases.[1]  Whether a statement was voluntary is a question of law subject to de novo review, although we accept the district court's factual findings unless they are clearly erroneous. <u>See</u> <u>United States v. Hernandez</u>, 93 F.3d 1493, 1501 (10th Cir. 1996).  However, one of Mr. Nafkha's <u>Miranda</u> objections — that relating to the officers' initial failure to administer <u>Miranda</u> warnings — will be reviewed only for plain error because Mr. Nafkha did not raise the issue in the district court.  <u>See</u> Fed. R. Crim. P. 52(b).

### A.  Initial Failure to Administer <u>Miranda</u> Warnings

Mr. Nafkha first contends that his interrogation statements were inadmissible because he was initially questioned without the benefit of <u>Miranda</u> warnings.  Before Mr. Nafkha was advised of his <u>Miranda</u> rights, he was asked

---

[1]The disposition of this appeal does not require us to consider whether 18 U.S.C. § 3501 overrules <u>Miranda</u>.  As in our prior cases, the confession here was obtained in full compliance with <u>Miranda</u> and related cases, making consideration of section 3501 unnecessary.  Moreover, the outcome in this case is governed by the Supreme Court's "totality of the circumstances" test under <u>Miranda</u>, <u>see</u>, <u>e.g.</u>, <u>Colorado v. Spring</u>, 479 U.S. 564, 573-74 (1986), which does not differ from the analysis amici would have us employ under section 3501.

whether officers would be in danger if they entered a motel room where suspected bank robbers were believed to have been staying; Mr. Nafkha answered no. See Aplt's App. III, at 11 (Magis. J.'s Rep. & Rec., dated Apr. 5, 1996) [hereinafter "Rep. & Rec."]; see also Tr. of Suppr. Hr'g (Feb. 13, 1996) at 8 [hereinafter "Suppr. Tr."]. After Mr. Nafkha was advised of his Miranda rights, he was asked about the latest bank robbery, and he implicated himself and others in that robbery and in four others. See Rep. & Rec. at 11-13; see also Suppr. Tr. at 15-25.

Mr. Nafkha's statement about the motel room was not obtained in violation of Miranda because no evidence of that statement was admitted at trial. See Miranda, 384 U.S. at 439 ("[W]e deal with the admissibility of statements . . . ."). Nor were Mr. Nafkha's post-warning statements inadmissible merely because of the initial failure to advise him of his rights. "[A] suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings." Oregon v. Elstad, 470 U.S. 298, 318 (1985). The question is whether any subsequent waiver of Miranda rights was voluntary, knowing, and intelligent. See id.; see also Spring, 479 U.S. at 573. For the reasons stated below, we conclude that Mr. Nafkha's decision to sign a waiver of his Miranda rights, see Rep. & Rec. at 13; Suppr. Tr. at 22-23, was voluntary, knowing, and intelligent.

4

## B. Length and Conditions of Interrogation

Mr. Nafkha contends that he was subjected to "[i]ntense and lengthy questioning." Aplt's Br. at 37. Protracted police interrogation can be "so inherently coercive that its very existence is irreconcilable with the possession of mental freedom by a lone suspect against whom its full coercive force is brought to bear." Ashcraft v. Tennessee, 322 U.S. 143, 154 (1944). However, we do not think Mr. Nafkha's interrogation was impermissibly coercive. Mr. Nafkha was in an interview room at the Salt Lake City Police Department from roughly 4:00 p.m. to 10:30 p.m. See Rep. & Rec. at 11, 14; Suppr. Tr. at 8, 11. However, aside from the single, aforementioned question about the danger to officers in entering the motel room, see Rep. & Rec. at 11; Suppr. Tr. at 8, no interrogation occurred until approximately 7:00 p.m, see Rep. & Rec. at 11; Suppr. Tr. 10-11. In the meantime, while Mr. Nafkha was alone, waiting to meet with the officers, he was asked at least twice whether he needed to use the restroom or wanted anything else. See Suppr. Tr. at 9-10. After the interrogation began, Mr. Nafkha was again asked periodically whether he needed anything, and, upon request, he was given a soft drink, cigarettes, and use of the restroom. See Rep. & Rec. at 14; Suppr. Tr. at 11, 20, 77. Moreover, Mr. Nafkha did much of the interrogating himself, probing the officers to find out how much they knew about the bank robberies. See Rep. & Rec. at 12; Suppr. Tr. at 18. These circumstances hardly

5

show the kind of coerciveness that has been condemned in other cases. See, e.g., Ashcraft, 322 U.S. at 153 (noting that suspect was interrogated by officers almost continuously for thirty-six hours).

**C. State Case and Federal Sentencing**

Mr. Nafkha contends that the officers tried to intimidate him into confessing by warning him that he would face serious weapons charges if he did not cooperate. Mr. Nafkha also says that the officers tried to bully him by claiming that his attorney had, in a pending state case, negotiated a plea bargain that was unfavorable to him.

The district court found that "[t]here was no disparagement of counsel's representation of" Mr. Nafkha. Rep. & Rec. at 13. The district court further found: (1) that "no threats or promises were made to" Mr. Nafkha, id. at 12; (2) that Agent Rankin discussed the United States Sentencing Guidelines, but only in response to Mr. Nafkha's questions, see id.; and (3) that although Agent Rankin mentioned the possibility of a sentence reduction for acceptance of responsibility, he said that he could not predict the sentence that Mr. Nafkha or any other defendant would receive, see id.

The district court's findings are supported by the record and are not clearly erroneous. See Suppr. Tr. at 18-20, 30-32, 54, 58-59. Although the findings are based on the officers' testimony, which differed somewhat from Mr. Nafkha's,

6

see id. at 75, we cannot say that the district court committed clear error in believing the officers rather than Mr. Nafkha. The district court was in a much better position than we are to judge the credibility of the witnesses at the suppression hearing. See United States v. Waupekenay, 973 F.2d 1533, 1536 (10th Cir. 1992).

### D. Invocation of Right to Counsel

In his final Miranda objection, Mr. Nafkha contends that his confession was inadmissible because the officers failed to honor his request for counsel. When a suspect invokes the right to counsel recognized in Miranda, 384 U.S. at 469-73, the interrogating officers must cease questioning him about the offense until his attorney is present or until he re-initiates the conversation himself. See Edwards v. United States, 451 U.S. 477, 484-85 (1981). This procedure is "designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights." Michigan v. Harvey, 494 U.S. 344, 350 (1990).

The district court found that Mr. Nafkha "never made a request to talk to or call his attorney, he was [merely] asking if he had that right." Rep. & Rec. at 13. We do not think the district court's factual finding was clearly erroneous. See United States v. Hernandez, 93 F.3d 1493, 1501 (10th Cir. 1996) (holding that claims of failure to administer Miranda warnings are to be reviewed for clear

7

error); <u>United States v. Giles</u>, 967 F.2d 382, 386 (10th Cir. 1992) (reviewing defendant's claim that he had requested counsel under a clear error standard).

At the suppression hearing, both Agent Rankin and Detective Timmerman testified that during the interrogation Mr. Nafkha said something to the effect of: "Can I speak to Ron?" — meaning Ronald J. Yengich, his attorney. <u>See</u> Suppr. Tr. at 21-22, 53. The officers further testified that they believed that Mr. Nafkha was simply asking whether he had the right to contact his attorney. <u>See</u> Suppr. Tr. at 24, 38-39, 54-55.

A request for counsel must not be "ambiguous or equivocal." <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994). A suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." <u>Id.</u>

We do not think Mr. Nafkha was sufficiently clear. We think the officers reasonably believed that he was not asking to speak with his attorney, but rather asking whether he had that right. <u>See</u> <u>United States v. March</u>, 999 F.2d 456, 461 (10th Cir. 1993) (comparing equivocal requests for counsel with defendants' mere statements or questions).

After Mr. Nafkha mentioned his attorney, the officers proceeded appropriately. "[W]hen confronted with an equivocal request for counsel, the

8

interrogating officers must cease all substantive questioning and limit further inquiries to clarifying the subject's ambiguous statements." March, 999 F.2d at 461. Here, Agent Rankin responded to Mr. Nafkha's inquiry about his attorney by saying: "[O]f course you can [talk to your attorney]." Rep. & Rec. at 13. Agent Rankin continued: "As we explained to you when we advised you of your rights, you have the right to contact your attorney whoever that may be." Suppr. Tr. at 22 (Test. of Agent Rankin) (paraphrasing statement he made to Mr. Nafkha during interrogation); see also id. at 53 (Test. of Detective Timmerman) (same). This explanation was followed by a short period of silence, as Mr. Nafkha appeared to be considering his options, after which he signed a waiver of his Miranda rights and submitted to questioning. See Rep. & Rec. at 13-14; see also Suppr. Tr. at 22, 53.

Mr. Nafkha's account of the interrogation differed from the officers': He testified that he demanded flatly to speak with Mr. Yengich, and that the officers ignored him and kept asking about the bank robberies. See Suppr Tr. at 67, 74. However, we cannot say that the district court committed clear error in believing the officers rather than Mr. Nafkha; as we explained above, the district court was in a much better position to judge the witnesses' credibility.

In sum, we hold that (1) because Mr. Nafkha's sole, un-Mirandized statement (a one-word answer to a question about officers' safety) was not

9

admitted at trial and because Mr. Nafkha's subsequent confession was made after the officers had administered proper <u>Miranda</u> warnings, the officers' initial failure to advise Mr. Nafkha of his <u>Miranda</u> rights does not warrant reversal; and (2) because the district court's factual findings regarding the circumstances leading up to this confession were not clearly erroneous, Mr. Nafkha's decision to waive his <u>Miranda</u> rights was free and voluntary.

## II. Joinder of Charges

Mr. Nafkha raises two issues with respect to the joinder of charges. The first issue concerns the bank robbery counts; the second, the felon-in-possession counts.

Mr. Nafkha did not object to the joinder of these charges in the district court. Therefore, we review only for plain error. <u>See</u> Fed. R. Crim. P. 52(b). Under "plain error" analysis, we inquire: (1) Was there error? (2) If so, was the error "plain" (<u>i.e.</u>, "clear," "obvious")? (3) Did the error affect "substantial rights" (<u>i.e.</u>, was the error prejudicial; did it affect the outcome of the district court proceedings)? (4) Did "the error seriously affect[] the fairness, integrity or public reputation of judicial proceedings" (<u>i.e.</u>, did it result in "a miscarriage of justice")? <u>See</u> <u>United States v. Olano</u>, 507 U.S. 725, 732-35 (1993).

10

## A. Bank Robbery

Mr. Nafkha objects to the joinder of the five bank robbery counts in a single indictment. Rule 8(a) of the Federal Rules of Criminal Procedure allows for the joinder of two or more offenses if they are "of the same or similar character." Fed. R. Crim. P. 8(a). However, the district court may sever counts that are properly joined if it appears that the defendant is prejudiced by their joinder. See Fed. R. Crim. P. 14. When joinder of offenses is based upon their "same or similar character," prejudice to the defendant is more likely because the jury may use evidence of one crime to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged. See United States v. Muniz, 1 F.3d 1018, 1023 (10th Cir. 1993).

Mr. Nafkha relies principally on Drew v. United States, 331 F.2d 85 (D.C. Cir. 1964). Although the Drew court held that joinder in that case was indeed prejudicial, the court also noted that "[t]he federal courts . . . have, however, found no prejudicial effect from joinder when the evidence of each crime is simple and distinct." Id. at 91. Likewise, we have suggested that prejudice does not exist unless the evidence is "too confusing or unfairly overlapping." Muniz, 1 F.3d at 1023.

Drew found error (although not plain error) in the joinder of two robbery offenses because they were confusingly similar: both were committed against

11

stores named High's, and both were committed by an African-American wearing sunglasses. See 331 F.2d at 92-94. In our case, three of the five banks had the same name (First Security). See Aplt's App. I, at 1-4 (Superseding Indictment, dated Nov. 22, 1995). Also, the robbers in each instance were dressed the same way and acted in the same manner: as the government itself notes, all the banks were subject to "'takeover' robberies by glove[d] and gun wielding robbers who wore masks and parked a car right outside the bank entrance." Aple's Br. at 33-34.

Nevertheless, we do not think the offenses were so similar as to present a risk of confusion. As in another case where we found no prejudice from joinder, "[t]he offenses took place on different dates at different locations, and different witnesses and evidence were presented on each count." Muniz, 1 F.3d at 1023. Accordingly, we do not think the district court committed error, plain or otherwise, in failing to sever the bank robbery counts.

## B. Felon-in-Possession

Mr. Nafkha objects to the joinder of the felon-in-possession counts with the other counts. The felon-in-possession counts required the government to prove that Mr. Nafkha had been "convicted . . . of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). "[E]vidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the

12

defendant." Old Chief v. United States, 117 S. Ct. 644, 652 (1997). The jury may "generaliz[e] a defendant's earlier bad act into bad character and tak[e] that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." Id. at 650.

For this reason, we have endorsed the "use of a redacted record, stipulation, affidavit, or other similar technique whereby the jury is informed only of the fact of a prior felony conviction, but not of the nature and substance of the conviction." United States v. Wacker, 72 F.3d 1453, 1472 (10th Cir. 1995) (emphasis supplied), cert. denied, 117 S. Ct. 136 (1996). In this case, Mr. Nafkha refused the government's offer to stipulate to the fact of his prior conviction. See Trial Tr. (Apr. 19, 1996) at 4, 70-71. See also United States v. Dean, 76 F.3d 329, 333-34 (10th Cir. 1996) (finding no prejudice where the defendant made a strategic choice not to stipulate to redaction from the prior judgments of specific references to the nature of the convictions). Mr. Nafkha contends on appeal that the evidence introduced as to his prior conviction made joinder of the felon-in-possession counts unfairly prejudicial.

We disagree. Despite Mr. Nafkha's failure to enter into a stipulation, the evidence admitted did not allow the jury to learn the name and nature of his prior conviction. The conviction documents in Mr. Nafkha's prior case were not given

13

to the jury; the documents were admitted for the limited purpose of establishing the fact of a prior felony conviction. See Trial Tr. (Apr. 19, 1996) at 85. Neither Mr. Nafkha's parole officer, nor the prosecutor examining him, mentioned the name or nature of Mr. Nafkha's prior offenses. See id. at 147-48. Moreover, the government's mention of the prior conviction in closing argument was brief and limited to establishing the fact of the conviction as an element of the felon-in-possession offenses. See Trial Tr. (Apr. 22, 1996) at 51. These circumstances are virtually identical to those in other cases where we found no showing of prejudice. See, e.g., United States v. Valentine, 706 F.2d 282, 290 (10th Cir. 1983).

Furthermore, the district court instructed the jurors that they should consider the prior conviction only as an element of the felon-in-possession counts and not as evidence of criminal propensity. See Aple's Supl. App. at 1 (Instr. No. 29). Mr. Nafkha cites a case from the Second Circuit that suggests limiting instructions are insufficient to cure the risk of prejudice posed by joinder of felon-in-possession counts. See United States v. Jones, 16 F.3d 487, 493 (2d Cir. 1994). However, in this circuit, we "look for the presence of limiting instructions" as a safeguard against prejudice. United States v. Patterson, 20 F.3d 809, 816 (10th Cir. 1994); accord Valentine, 706 F.2d at 290 n.7. Consequently, we conclude that there was no showing of prejudice and, therefore, no plain error.

14

### III. Detective Timmerman's Testimony

During trial, Detective Timmerman testified that Kissione Netane (a ten-year-old boy who witnessed the robbers escaping after one of their heists) had identified Mr. Nafkha from a police array of photographs. See Trial Tr. (Apr. 19, 1996) at 81-82. After Detective Timmerman's testimony, the district court refused to admit the photo array into evidence, apparently on the ground that the police lacked sufficient reason to include Mr. Nafkha's photo in the array. See id. at 82-83.

On appeal, Mr. Nafkha argues that Detective Timmerman's testimony was prejudicial and inadmissible hearsay, and that the district court erred in failing to declare a mistrial or, at least, instruct the jury to disregard the testimony. Because Mr. Nafkha did not raise such objections at trial, we review only for plain error. See Fed. R. Crim. P. 52(b).

However, we need not reach the issue of whether Detective Timmerman's testimony was inadmissible hearsay, because this testimony was not the only evidence linking Mr. Nafkha to the bank robberies and, thus, was not unduly prejudicial. In addition to the confession discussed above, there was also evidence that the vehicle in which Mr. Nafkha was found matched the description of the vehicle involved in one of the bank robberies. See Trial Tr. (Apr. 19, 1996) at 122, 124 (Test. of Officer David Clair Cracroft). Furthermore, the

15

vehicle in which Mr. Nafkha was found contained masks, guns, and other evidence of his guilt. See id. at 139, 140 (Test. of FBI Special Agent Daniel Richard Ward). Thus, even if the district court had erred in admitting Detective Timmerman's testimony, this testimony was merely cumulative and, therefore, no prejudice could have resulted from its admission. See United States v. Campbell, 937 F.2d 404, 408 (10th Cir. 1991). Accordingly, the district court did not commit plain error by failing to give the jury a limiting instruction regarding Detective Timmerman's testimony.

## CONCLUSION

For the foregoing reasons, we conclude that: (1) Mr. Nafkha's confession was voluntary and admissible under Miranda and related cases; (2) the five bank robbery counts were properly joined in a single indictment and trial, and the felon-in-possession counts were properly joined with the other counts; and (3) the district court did not commit plain error by failing to take corrective action after allowing Detective Timmerman's testimony about the photo array. Accordingly, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Robert H. Henry
Circuit Judge

16