In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1314

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GARY C. QUILLING,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99 CR 30059--Richard Mills, Judge.

ARGUED MAY 15, 2001--DECIDED August 20, 2001

   Before RIPPLE, MANION and DIANE P. WOOD,
Circuit Judges.

   RIPPLE, Circuit Judge.  Gary Quilling was
charged by indictment with one count of
being a felon in possession of a firearm
and with one count of being a felon in
possession of firearm ammunition, both in
violation of 18 U.S.C. sec. 922(g)(1). A
jury found Mr. Quilling guilty on both
counts, and he was sentenced to seventy-
eight months' imprisonment and three
years of supervised release. For the
reasons set forth in the following
opinion, we affirm the judgment of the
district court.

I

BACKGROUND

A.  Facts

   In the evening on September 3, 1998,
members of the Violent Crime Initiative
Task Force ("task force"), comprised of
federal and local law enforcement
officers, were patrolling an area of East
St. Louis, Illinois. The officers
werepatrolling in both marked and
unmarked vehicles in an organized
formation.

   At approximately 8:45 p.m., the task
force came upon a 1984 gray, four-door

Chevrolet car bearing the license plate "Gary Q 1." A member of the patrol, Officer Nick Mueller, radioed to the rest of the group, "That's Gary Quilling's vehicle." Tr.IX at 39. Mr. Quilling was driving the car. He parked and began walking away from the car. Frank Jefferson, a passenger, also exited the vehicle. Deputy Marshal/1 Lawrence Kelly, a member of the patrol, pulled his vehicle parallel to Mr. Quilling's car.

Another officer at the scene, Officer James Jones, saw Mr. Quilling walking away and said, "Hey Gary, we need [ ] to talk to you." Id. at 66. Mr. Quilling began walking back toward the car voluntarily. Marshal Kelly walked up to the passenger side of Mr. Quilling's car, where Jefferson was standing, and shined his flashlight into the car. He noticed a handgun on the front seat of the automobile. Marshal Kelly said in a loud voice, "Whose gun is this in the car?" Id. at 48. Mr. Quilling replied, "It's not my gun." Id. at 68. Marshal Kelly attempted to retrieve the gun by opening the passenger door, but he was unsuccessful.

Marshal Kelly briefly spoke to Jefferson at the scene. At that time, Jefferson stated that he did not know to whom the firearm belonged, but that it was not his. That night, Jefferson made and signed a statement claiming no knowledge or ownership of the firearm. However, Jefferson later testified at Mr. Quilling's trial that the firearm did belong to him and that he had lied at the scene and had made a false statement at the United States Marshal's office because he was "scared." Id. at 181.

After Mr. Quilling said, "It's not my gun," he dropped the keys to the automobile and did not attempt to pick them up. Marshal Tom Woods then approached the automobile from the driver's side and saw the firearm on the seat; he leaned through the open driver's side window and seized the firearm. Both Marshal Kelly and Marshal Woods later testified that the barrel of the firearm was facing the passenger window, the butt of the firearm was pointed toward the rear of the automobile, and the firearm was placed near the center armrest next to where the driver's right thigh would be.

Investigator Phillip Delaney, a part-time member of the task force, approached Mr. Quilling and escorted him to the patrol vehicle that Investigator Delaney and Marshal Woods had been driving. They both sat in the rear of the vehicle. Because he had come in contact with Mr. Quilling previously, Investigator Delaney asked Mr. Quilling if he remembered him; Mr. Quilling replied that he did. Mr. Quilling then asked, "What's going to happen to me?" Id. at 105. Investigator Delaney told Mr. Quilling that the officers were going to take him to the United States Marshal's office to talk about the gun. Mr. Quilling then said, "You know I need that because I was shot before." Id. at 106. Investigator Delaney ended the conversation by saying, "Gary, we're going to advise . . . you of your rights at the Marshal's Office, we'll talk about it there." Id. That night Mr. Quilling was taken to the United States Marshal's office, but he did not make a statement and was released shortly thereafter.

Seven months later, on April 28, 1999, four members of the task force went to a house located at 9  Cahokia Street n Cahokia, Illinois, to execute an arrest warrant for Mr. Quilling in reference to the possession of the firearm. The task force went to that address because it was a "known address" for Mr. Quilling, id. at 144-45, and Mr. Quilling's automobile was visible in the driveway.

The house at 9  Cahokia Street isa single-story home. It contains a great room, a kitchen and eating area and one back bedroom. The task force approached the house. Marshal Sean Newlin and Officer Mueller went to the front door while two other officers went to the rear of the house. Officer Mueller knocked on the front door and announced "police" and "open the door." Id. at 149. Shortly after Officer Mueller began knocking on the front door, the officers in the rear of the house began knocking on windows and calling Mr. Quilling's name.

After approximately five to fifteen minutes,/2 a man, later identified as Joe King, answered the door and stated that, although he would not let the officers in, he would get the person who resided there. Approximately ten to

twenty minutes later, Mr. Quilling walked out of the front door onto the front porch. After Mr. Quilling was handcuffed and taken into custody, Marshal Newlin again knocked on the door of the residence. Mr. Quilling's girlfriend, LaDonna Dixon, answered the door and allowed Marshal Newlin into the front room of the house.

At that time, Mr. Quilling was brought back into the front room. Marshal Newlin asked who lived in the residence. In unison, Mr. Quilling and Dixon responded, "We do." Id. at 153. Marshal Newlin then asked whose name was on the lease, and Dixon replied that only her name was on the lease. Marshal Newlin then asked for and received Dixon's permission to search the house.

While searching the bedroom, the officers found a box of .38 caliber ammunition on a table at the base of the bed and at least one loose round of the same ammunition in the bed. The officers seized the box of ammunition and the loose round. Later, this ammunition was examined by Thomas Gamboe, a forensic scientist employed by the Illinois State Police. Gamboe offered expert testimony at Mr. Quilling's trial as to how the properties of the ammunition seized from the house on 9  Cahokia Street compars to the ammunition taken from the gun seized from Mr. Quilling's car on September 3, 1998.

Gamboe testified that all of the ammunition seized from the automobile and all of the ammunition seized at the house was .38 caliber and consisted of two different types of bullets--lead hollow point and full metal jacket flat nose. Each set of ammunition (the ammunition from the car and the ammunition from 9 Cahokia Street) contained at least one bullet of each type. The lead hollow point bullets that were found in both the car and at 9  Cahokia Street were markd with two cannelures in similar spots on each bullet. (A cannelure is a ring around the circumference of a bullet that manufacturers use to aid in identifying the bullet's weight.) The sets of full metal jacket bullets also shared similar characteristics. The diameter, length and design of the cartridge case were all the same for the bullets found in the car and at 9  Cahokia Street. Additionally, thee

bullets were all flat-nosed, had a step base, were 138 grain (a weight measurement) and had no cannelures.

B.  Earlier Proceedings

In June of 1999, Mr. Quilling was tried by jury on the possession of a firearm charge. The verdict from that trial was later vacated, and Mr. Quilling was awarded a new trial on grounds unrelated to this appeal. On September 9, 2000, the Government filed a superceding indictment, adding a charge that Mr. Quilling knowingly possessed firearm ammunition in violation of 18 U.S.C. sec. 922(g)(1).

Mr. Quilling filed a motion to sever the two counts. The court denied the motion. The court held that joinder of the counts was proper because the counts were of like class and character and the essential elements of each offense was the same. Severance was not required because (1) Mr. Quilling had failed to prove that actual prejudice would occur as a result of trying the two counts together, and (2) there was little chance that the jury would be confused by the joinder of the counts because the trial was short and the evidence was straightforward.

On October 26, 2000, Mr. Quilling filed a pro se motion to suppress the statement that he made to Investigator Delaney on September 3, 1998, in which he said, "You know I need that because I was shot before." Tr.IX at 106. He also moved to suppress "any and all evidence relating to the pre-trial statement of the defendant by any witness who was involved in the improper obtaining of the statement on September 3rd 1998." R.80. The court denied the motion to suppress, stating that the motion was untimely. The court also noted that, even if the motion had been timely, Mr. Quilling had failed to present facts that were sufficiently definite to enable the court to decide that a "substantial claim was presented and that there are disputed issues of material fact which will affect the outcome of the motion." R.82 (internal quotation marks and citations omitted).

At the end of the two-day trial, the jury found Mr. Quilling guilty on both counts. After the verdict, Mr. Quilling

filed a motion for judgment of acquittal, and, in the alternative, for a new trial on both counts. The district court denied the motion. After the imposition of sentence, Mr. Quilling filed this appeal.

II

DISCUSSION

A. Possession of Firearm Ammunition as a Felon

Mr. Quilling first claims that the district court improperly denied his motion for judgment of acquittal on the charge of possession of firearm ammunition. In his view, there was insufficient evidence to sustain his conviction on this count.

We review the ruling of the district court denying a motion for judgment of acquittal de novo. See United States v. Jones, 222 F.3d 349, 351 (7th Cir. 2000). We must uphold the jury's decision if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Albarran, 233 F.3d 972, 975 (7th Cir. 2000) (internal quotation marks and citations omitted); see also United States v. Richardson, 208 F.3d 626, 631 (7th Cir.) cert. denied, 121 S. Ct. 259 (2000). A jury's verdict will be overturned only "if the record contains no evidence, no matter how the evidence is weighed, from which the jury could have found guilt beyond a reasonable doubt." Albarran, 233 F.3d at 975.

Although Mr. Quilling was not in actual physical possession of the ammunition found during his arrest, the district court found that he was in constructive possession of the ammunition. Constructive possession exists when "a person . . . knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly, or through others." United States v. Garrett, 903 F.2d 1105, 1110 (7th Cir. 1990) (quoting United States v. Taylor, 728 F.2d 864, 868 (7th Cir. 1990)); see also United States v. Gill, 58 F.3d 334, 336 (7th Cir. 1995). A defendant's mere presence in a dwelling where a prohibited item was found, without more, is not sufficient to establish constructive possession. See

United States v. Herrera, 757 F.2d 144, 150 (7th Cir. 1985) (holding that defendant who picked up heroin at a house was not in constructive possession of additional heroin when defendant's fingerprints were not on a footlocker at the house in which the additional heroin was located and when the Government did not show defendant had a key to footlocker). Instead, the Government must "establish a nexus between the accused and the contraband, in order to distinguish the accused from a mere bystander." Richardson, 208 F.3d at 632 (citing United States v. Windom, 19 F.3d 1190, 1199 (7th Cir. 1994)).

However, we have found constructive possession to exist when a defendant had a substantial connection to the residence where the firearm and the contraband was found. See Richardson, 208 F.3d at 632 (finding constructive possession when a defendant admitted being the caretaker and the landlord of the residence, medicine bottles with defendant's name were found at residence and defendant re ceived mail at the residence); United States v. Kitchen, 57 F.3d 516, 520-21 (7th Cir. 1995) (finding constructivepossession when the Government presented evidence that defendant admitted living at the residence, could be reached by telephone there and paid for $10,000 of repairs to the residence). Indeed, in Kitchen, we noted approvingly an Eighth Circuit decision that stated that constructive possession can be established by showing that the contraband was seized at the defendant's residence. See Kitchen, 57 F.3d at 521 (quoting United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993)).

We agree with the district court that the Government established a sufficient nexus between Mr. Quilling and the ammunition. Most importantly, Mr. Quilling stated at the time of his arrest that 9 Cahokia Street was hs residence./3 When Marshal Newlin inquired as to who lived in the house, Mr. Quilling and Dixon both replied, "We do." Tr.IX at 153. In addition, officers stated that the one-bedroom residence was a "known address" for Mr. Quilling. Id. at 144. Further, Mr. Quilling's car was parked in the driveway when officers went to arrest him. These factors were

sufficient to permit the jury to find beyond a reasonable doubt that Mr. Quilling was in possession of the firearm ammunition.

B.  Possession of a Firearm as a Felon-- Cumulative Error

Mr. Quilling next claims that his conviction for possession of a firearm is infected by cumulative error committed by the district court in the course of the proceedings. Specifically, he states that the district court committed error in denying the motion for the judgment of acquittal on the possession of firearm ammunition count. He argues that this error, combined with the court's earlier denial of his motion to sever the claims in the case and the Government's failure to deliver, in a timely fashion, the grand jury testimony of ATF Agent Morgan Fisher, had the cumulative effect of influencing the jury to reach a verdict of guilty on the possession of a firearm count. See United States v. Rogers, 89 F.3d 1326, 1338 (7th Cir. 1996) (describing that the cumulative effect of trial errors "may deprive a defendant of his constitutional right to a fair trial").

To set the stage for the remainder of his contentions, Mr. Quilling submits that the evidence supporting his conviction for possession of a firearm is meager and that his conviction on that count is properly characterized as a "close case." Appellant's Br. at 12. We note, however, that the evidence showed that (1) the firearm was found in Mr. Quilling's car, which he had been driving before pulling over to the side of the road; (2) after Mr. Quilling exited the car, he began walking away from the officers, making it appear as if he was attempting to distance himself from the vehicle; and (3) Mr. Quilling admitted later that day that the gun was his. This evidence certainly is sufficient to support the conviction. See Gill, 58 F.3d at 336-37; Garrett, 903 F.2d at 1110-11. There was evidence to the contrary, the testimony of a confederate, Frank Jefferson. But Jefferson had altered his testimony at trial from his earlier statements, and the jury certainly acted well within its authority in rejecting his version of who owned the firearm.

Mr. Quilling next points out that his counsel did not receive the transcript of the grand jury testimony of Agent Morgan Fisher before Mr. Quilling's pro se motion to suppress evidence had been denied by the district court. He claims that this testimony, together with the testimony of Frank Jefferson, would have led to the suppression of the firearm and, consequently, to the dismissal of the count. We think that the Government is correct in pointing out that the arrival date of the testimony was not outcome-determinative on the suppression of the firearm because the motion was denied on the ground that it was not filed in a timely manner. Moreover, the motion did not seek the suppression of the gun.

Mr. Quilling also claims that the counts against him should have been severed and that, because they were not, he was prejudiced because "the Jury very probably inferred, that Quilling possessed the gun because he possessed the bullets and vice versa." Appellant's Br. at 12.

To determine whether the denial of severance is improper, we first determine whether joinder was permissible. Whether joinder is permissible is a question of law that is subject to de novo review. See United States v. Turner, 93 F.3d 276, 283 (7th Cir. 1996); United States v. Archer, 843 F.2d 1019, 1021 (7th Cir. 1988). Rule 8 of the Federal Rules of Criminal Procedure provides:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Fed. R. Crim. P. 8(a).

In this case, the district court found that the two offenses charged are of a like class and character. In fact, both counts charged are violations of 18 U.S.C. sec. 922(g)(1). The essential elements of the crime are therefore virtually the same for each offense. See United States v. Walls, 80 F.3d 238, 243

(7th Cir. 1996) (holding that it was proper for two sec. 922(g)(1) counts to be joined even though four years separated the offenses). Although it is not required that the two counts be related evidentially or temporally, the district court did find these factors to be satisfied in this case. The district court noted that there would be some evidentiary overlap between the counts in Mr. Quilling's case. The court further concluded that the eight months separating the offenses was a short enough period of time to characterize the offenses as temporally related./4

It is important to note several other factors that are supportive of the district court's decision. Mr. Quilling cannot claim prejudice due to proof that he was a convicted felon because that factor was an element of each count. Additionally, sufficient evidence existed as to each of the counts. In all likelihood, Mr. Quilling would have been found guilty on each count had separate trials occurred. Therefore, the district court accomplished the goal of judicial efficiency without causing the defendant prejudice. Joinder of the two counts was entirely proper.

Once joinder is deemed proper, we shall reverse a district court's denial of a severance motion only upon a showing of a clear abuse of discretion. See Turner, 93 F.3d at 284; United States v. Pulido, 69 F.3d 192, 207 (7th Cir. 1995). Rule 14 of the Federal Rules of Criminal Procedure provides:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

Fed. R. Crim. P. 14. The defendant must be able to show that the denial of

severance "caused him actual prejudice in that it prevented him from receiving a fair trial; it is not enough that separate trials may have provided him a better opportunity for an acquittal." United States v. Alexander, 135 F.3d 470, 477 (7th Cir. 1998) (citations omitted).

Mr. Quilling argues that he was unduly prejudiced because the Government argued, and the jury possibly inferred, that Mr. Quilling possessed the gun because hepossessed the bullets and vice versa. However, "'prejudice requiring severance is not shown if evidence on the severed counts would be admissible in the trial of the remaining counts.'" United States v. Windom, 19 F.3d 1190, 1198 (7th Cir. 1994) (quoting United States v. Rogers, 475 F.2d 821, 828 (7th Cir. 1973)). In this case, some of the evidence from each count likely would have been admissible in the other trial under Federal Rule of Evidence 404(b). Because the evidence likely would be admissible, Mr. Quilling has failed to show that the denial of severance caused actual prejudice.

Moreover, we have held that proper jury instructions are an "adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and cumulation of evidence." Alexander, 135 F.3d at 478 (internal quotation marks and citations omitted); see also United States v. Stillo, 57 F.3d 553, 557 (7th Cir. 1995). The jury in this case was instructed properly to consider each offense separately. Lastly, Mr. Quilling's trial lasted only two days and the evidence was not complicated. These considerations further support our conclusion that the denial of severance was proper in this case. Alexander, 135 F.3d at 478; United States v. Coleman, 22 F.3d 126, 135 (7th Cir. 1994). Accordingly, the district court did not err in denying Mr. Quilling's motion for severance.


Conclusion

The district court correctly handled the matters that Mr. Quilling has contended constitute prejudicial error. Accordingly, we affirm the judgment of the district court.

AFFIRMED

FOOTNOTES

/1 Deputy United States marshals will be referred to as "marshals" throughout this opinion.

/2 Marshal James Taylor testified that the officers waited ten to fifteen minutes. See Tr.IX at 117. Marshal Newlin testified that the time period was five to ten minutes. See id. at 148.

/3 Mr. Quilling also gave 9 Cahokia Street as hs residence when asked for his address during a court hearing. See Tr.VIII at 2-3.

/4 Cf. United States v. Muniz, 1 F.3d 1018, 1022 (10th Cir. 1993). In Muniz, the Tenth Circuit held that the trial court properly joined two counts that were in violation of sec. 922(g)(1). The defendant was charged with two separate offenses of being a felon in possession of a firearm. The offenses occurred four months apart. The court noted that joinder based on "same or similar character" was more likely to cause prejudice to the defendant. Id. at 1023 (citations omitted). The court reasoned that "prejudice to the defendant is more likely since proof of one crime may tend to corroborate the commission of the other crime in violation of the evidentiary rules against evidence of a general criminal disposition or propensity to commit crime." Id. However, even though the court was cognizant of this hazard, it still held that the joinder of the counts was proper because the evidence was not confusing and the case for each count was strong on its own. See id. at 1022-23.