**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Loren Robbie WILSON,
Defendant-Appellant.**

**No. 82–1610.**

United States Court of Appeals,
Tenth Circuit.

Oct. 21, 1983.

Patrick T. Murphy, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., Denver, Colo., on brief), for plaintiff-appellee.

Richard B. Deutsch, Denver, Colo., for defendant-appellant.

Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant Loren Robbie Wilson timely appeals his conviction, after a jury trial, on charges of robbery of an F.D.I.C. insured bank with the use of a dangerous weapon in violation of 18 U.S.C. § 2113(a) and (d).

This appeal presents four issues. First, Wilson argues that the trial court's denial of Wilson's motion for acquittal was error because the Government failed to establish a jurisdictional element of the offense, namely the insured status of the bank. Second, Wilson contends that the trial court's denial of Wilson's motion for dismissal under the Interstate Agreement on Detainers Act was improper. Third, Wilson says that the trial court's admission in evidence of surveillance photographs, over Wilson's objection, was improper because the photographs were not properly authenticated. Fourth, Wilson argues that compelling him to stand and remove his glasses for witness identification purposes is constitutionally impermissible. We disagree and affirm the conviction.

## I

On August 31, 1981, the Frontier Bank in Denver, Colorado, was robbed by three men of approximately $30,000 in money and property. A complaint was filed on September 4, 1981, charging Wilson with armed bank robbery and a federal grand jury indicted Wilson on September 11, 1981, on that charge. On September 4, 1981, Wilson also had criminal charges filed against him in three separate counties in Missouri. I R. 5. Immediately after the complaint was filed on September 4, 1981, in Colorado, the United States Marshal contacted the Missouri authorities and orally requested that a detainer be lodged against Wilson. Another similar request was made by the United States Marshal on September 14, 1981.

The defendant was notified of his rights and signed a written request on September 14, 1981, for speedy disposition of the detainer. This was received by the United States Marshal in Denver, Colorado, on September 20, 1981. *Id.* at 6. Wilson entered a plea of guilty to second degree burglary in two of the Missouri counties and subsequently was sentenced in each, on September 11 and 25, 1981. A jury in the third Missouri county convicted Wilson of first degree robbery on January 6, 1982, and Wilson was sentenced to a term to run consecutively with his two other sentences on February 11, 1982. On February 22, 1982, Wilson entered the Missouri State Prison. *Id.*

On February 24, 1982, a writ of habeas corpus ad prosequendum was issued by the United States Magistrate to bring Wilson to Denver, Colorado, to face the bank robbery charge pending in federal court there. On March 11, 1982, Wilson pled not guilty to the indictment. A jury trial was set. *Id.*

Wilson was subsequently convicted, *id.* at 13, and sentenced to twenty-five (25) years' imprisonment, the sentence to run consecutively to the sentences imposed in the States of Missouri and Iowa. *Id.* at 15.

## II

First, Wilson argues that the trial court's denial of his motion for acquittal was improper because the Government failed to establish the jurisdictional element that the bank was federally insured on the date of the offense. Wilson says that no certificate of insurance was ever introduced in evidence. The Government asserts that the trial court correctly denied defendant's motion for acquittal because the President of the Frontier Bank, Roger Reiling, clearly testified that on August 31, 1981, the day of the robbery, the bank was insured by the Federal Deposit Insurance Corporation. The Government says that from this testimony the jury could properly find that the Frontier Bank was insured by the F.D.I.C. at the time of the offense.

When faced with a challenge to the sufficiency of the evidence following a

jury verdict of guilty, we are required to view the evidence in the light most favorable to the Government and to determine whether there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, on which the defendant could be found guilty beyond a reasonable doubt. *United States v. Brewer,* 630 F.2d 795, 803–04 (10th Cir.1980); *United States v. Strand,* 617 F.2d 571, 578 (10th Cir.1980), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48. *See also, Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Samara,* 643 F.2d 701, 704 (10th Cir.1981), *cert. denied,* 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104. Here Mr. Reiling, President of Frontier Bank, testified that on August 31, 1981, the date that the robbery took place, the Frontier Bank was insured by the F.D.I.C., which agency insures the deposits of the bank. III R. 150–151. Such testimony is sufficient on this element of the offense. *See Cook v. United States,* 320 F.2d 258, 259 (5th Cir.).

### III

Wilson contends that the trial court's denial of his motion for dismissal under the Interstate Agreement on Detainers Act was improper; that at the time the detainer was lodged and the request for speedy disposition was made by Wilson, Wilson was serving a term of imprisonment in a penal institution of the holding state, Missouri; that the Government failed to comply with the provisions of the Act by not taking the necessary steps to obtain a continuance of the Missouri state court trial; and that the Government could have brought Wilson to trial in this matter during the approximately 120 day period from his request for speedy disposition of the detainer to his trial in the Missouri state courts.

The Government asserts that the trial court correctly denied the defendant's motion to dismiss under the Act; that Wilson did not begin to serve his prison term until February 22, 1982; and that therefore by commencing the trial April 21, 1982, he was brought to trial within the 180 day time period. The Government says that Wilson

was not available for prosecution in the instant case until the proceedings in Missouri were completed and thus the 180 day period was tolled until the completion of the proceedings in Missouri on February 11, 1982.

Article III(a) of the Interstate Agreement on Detainers Act, 18 U.S.C.App. at 1395–1398 (1976) provides:

> *Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment* there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: *Provided,* That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. (Emphasis added).

■ Under the wording of Article III(a) it seems clear that the time restrictions of the Act do not come into play until a person begins service of a "term of imprisonment." In *United States v. Roberts,* 548 F.2d 665, 670–71 (6th Cir.1977), the court stated that

> the Agreement is only concerned that a sentenced prisoner who has entered into the life of the institution to which he has been committed for a term of imprisonment not have programs of treatment and rehabilitation obstructed by numerous absences in connection with successive proceedings related to pending charges in another jurisdiction.

■ Wilson was sentenced on the last Missouri charge on February 11, 1982, and began serving his prison term in the Missouri State Prison, Jefferson City, Missouri,

on February 22, 1982. I R. 6. Prior to that time he was only held in some other facilities awaiting final sentencing. We find that until Wilson was imprisoned he was not covered by the terms of Article III(a) of the Interstate Agreement on Detainers Act.[1] His federal trial on this matter, which commenced on April 21, 1982, thus began well within the limits set by the Act.

With regard to Wilson's contention that the Government failed to comply with the Act by not taking the necessary steps to obtain a continuance of the Missouri state court trials, we do not find that the Act imposes any duty upon the Government to request such continuances. The Act simply provides that, for good cause shown the court having jurisdiction of the untried matter, here the federal charge in Colorado, may grant any necessary or reasonable continuance. See Article III(a).

We are satisfied there was no violation of the Act.

## IV

Wilson next contends that the trial court's admission in evidence, over Wilson's objection, of surveillance photographs (Exhibits 10, 11, and 12) allegedly depicting the gunman during the robbery, was improper because the photographs were not properly authenticated. Wilson argues that because the witness called to authenticate the photographs did not activate the surveillance camera until she was getting under a desk and saw nothing further until the robbery had ended, her testimony regarding what the photographs purport to show must be disregarded. The Government says that the trial court was correct in admitting the bank surveillance photographs over Wilson's objection because if direct testimony regarding foundational matters is absent, the contents of the photographs, in combination with other circumstantial or direct evidence, may sufficiently explain and au-thenticate a photograph to justify its admission.

Fed.R.Evid. 901(a) provides:

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

With regard to the principle on which photographs are admitted, *McCormick's Handbook of the Law of Evidence* § 214, at 530–31 (2d ed. 1972) states that

a photograph is viewed merely as a graphic portrayal of oral testimony, and becomes admissible only when a witness has testified that it is a correct and accurate representation of relevant facts personally observed by the witness. Accordingly, under this theory, the witness who lays the foundation need not be the photographer nor need he know anything of the time, conditions, or mechanisms of the taking. Instead he need only know about the facts represented or the scene or objects photographed, and once this knowledge is shown he can say whether the photograph correctly and accurately portrays these facts. Once the photograph is thus verified it is admissible as a graphic portrayal of the verifying witness' testimony into which it is incorporated by reference.

Viola Korte, loan secretary in the Frontier Bank, testified that she saw the man with the gun when he came in and watched him for a minute or two; that she remembered him; that she remembered his height, build, face and hair; that the lighting conditions were very good and that her desk was about 25 feet from the door. After the gunman told everyone to get down on the floor, she immediately got under her desk and activated the surveillance camera. Ms. Korte identified defendant Wilson, who was sitting in the courtroom, as the man with the gun in the bank. III R. 106–112.

1. Even though the district court found that the "180 days commenced running at the earliest on February 11" (II R. 10), the date Wilson was sentenced in the last state court proceeding, we find that the 180 day time period began running on February 22, 1982, when Wilson entered the Missouri State Prison.

Ms. Korte was adequately familiar with the facts represented, the scene, and the objects photographed. This knowledge was clearly shown by her testimony and she, as well, testified that the photographs correctly and accurately portrayed these facts. *Id.* at 108–110. It is true that because Ms. Korte got under the desk, she could not see what went on at the time the pictures were actually made. Nevertheless, the testimony by Ms. Korte about her activation of the camera, together with her testimony on her familiarity with the scene just before the pictures were taken, and her observations of the defendant, are sufficient circumstances to support the admission of the exhibits.

We find that the photographs (Exhibits 10, 11, and 12) were properly authenticated and correctly admitted.

## V

■ Lastly, Wilson argues that compelling him to stand and remove his glasses for witness identification purposes is constitutionally impermissible. The Government contends that although a person cannot be compelled to be a witness against himself in a criminal prosecution, this protection extends only to testimonial evidence.

In *Holt v. United States,* 218 U.S. 245, 252–53, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910) the Supreme Court stated that "the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." "Requiring a defendant to stand in court for purposes of identification is not a violation of the Fifth Amendment." *Peoples v. United States,* 365 F.2d 284, 285 (10th Cir.1966). We have also held that a trial court's order that a defendant shave his beard to further trial identification did not violate the defendant's Fifth Amendment privilege against self-incrimination where testimony indicated he had been clean-shaven at the time of the offense. *United States v. Lamb,* 575 F.2d 1310, 1316 (10th Cir.), *cert. denied,* 439 U.S. 854, 99 S.Ct. 165, 58 L.Ed.2d 160 (1978).

We conclude that the trial court's order requiring Wilson to stand, remove his glasses, and face prosecution witnesses for identification purposes during the course of the trial was not violative of his Fifth Amendment privilege against self incrimination.

AFFIRMED.