**UNITED STATES of America**

v.

**Warren ALLEN.**

**No. CRIM. A. 99–684–2.**

United States District Court,
E.D. Pennsylvania.

Jan. 5, 2000.

Sarah L. Grieb, Asst. U.S. Atty., U.S. Atty. Office, Philadelphia, PA, for Plaintiff.

Eric Vos, Defender Assoc. of Philadelphia, Federal Court Div., Philadelphia, PA, for Defendant.

### *Memorandum*

ANITA B. BRODY, District Judge.

Before me was the United States' Motion to Dismiss the Charges Against Defendant Warren Allen Without Prejudice. Allen responded to the United States' motion and asserted that the charges against him should be dismissed with prejudice. On December 29, 1999, I issued an order granting the United States' Motion to Dismiss the Charges Against Defendant Warren Allen Without Prejudice.

### *Background*

On October 19, 1999, a federal grand jury indicted defendant Warren Allen for one count of conspiracy to defraud the United States, in violation of 18 U.S.C. Section 371, and fourteen counts of theft of government property, in violation of 18 U.S.C. Section 641. The indictment ac-

cused Allen of conspiring to pass more than eighty bad checks that were drawn on more than twenty different accounts over the course of a year. At the time of the indictment, Allen was serving a sentence of eleven and one half to twenty-three months in the Philadelphia Detention Center on state charges.[1]

On October 19, 1999, a bench warrant was issued for Allen's arrest. Pursuant to the bench warrant, on October 21, 1999, the United States Marshal Service lodged a detainer against Allen with the Philadelphia Detention Center. On November 9, 1999, Allen was physically transferred from the Philadelphia Detention Center to the federal courthouse to be arraigned for the federal indictment before Magistrate Judge Charles B. Smith.[2]

At the arraignment, Allen declined to waive his right under the Interstate Agreement on Detainers Act, 18 U.S.C.App. 2 ("IADA"), to remain in federal custody until the federal charges were completely resolved. During the arraignment, the following colloquy between Magistrate Judge Smith ("The Court"), the Assistant United States Attorney ("AUSA") and Allen's counsel ("Defense") occurred:

> The Court: ... [B]ail is set at $10,000.
>
> Defense: Very well. Thank you.
>
> AUSA: Well, no, that would not be agreeable to the government, your Honor.
>
> The Court: I think you think he has $10,000. He is in jail.
>
> AUSA: I'm thinking the issue we need to resolve then is whether he will waive his rights under the Interstate Agreement on Detainers because if he is not—

> The Court: We want to find out where he will be.
>
> AUSA: Yes, because he is a sentenced state prisoner. If he is going to be given bail, we will continue prosecution, wouldn't he have to waive his rights under the Interstate Agreement on Detainers? I think it might be useful, at least to have a discussion with the defendant what his position is. I do have the waivers with me. If he is willing to waive it, that might make the case easier to administer, that way we don't have to keep issuing writs every time there is a Court appearance for the defendant, if he is willing to waive his rights.

> ✻   ✻   ✻   ✻   ✻   ✻

> [Recess]
>
> Defense: Mr. [Allen] will not waive his rights under the Interstate Detainer Act. I have informed him that the Court imposed $10,000 cash bail. In the event that he is released on the six months sentence, he will he will still have to come up with $10,000 cash.

> ✻   ✻   ✻   ✻   ✻   ✻

> AUSA: It is my understanding from [a different AUSA], this is a situation where the defendant may be released from state custody very soon.
>
> The Court: He will come back to see us with his $10,000, if he has been passing bad checks for $20 or $30, I doubt he will have a big ten.
>
> AUSA: Upon his release from state custody, he will be taken into custody of the U.S. Marshals unless he posts $10,000?
>
> The Court: Unless he posts $10,000.

---

**1.** According to Allen, some of the state charges for which Allen was already imprisoned were considered overt acts within the conspiracy charged in the federal indictment. The United States disagrees and contends that only one of the state charges to which Allen pled guilty was included as an overt act in the conspiracy count of the federal indictment.

**2.** The government is not challenging that custody of Allen moved from state to federal court for purposes of the Detainers Act when he was transferred for the arraignment.

Defense: Thank you, your Honor.

Transcript of Arraignment Hearing of Defendant Warren Allen, Nov. 9, 1999, at 10–13. After Allen was arraigned, Judge Smith set Allen's bail at $10,000 and the U.S. Marshal Service returned Allen to the Philadelphia Detention Center.

On November 19, 1999, the United States moved to dismiss the charges against Warren Allen without prejudice claiming that the post-arraignment transfer of Allen back to the Philadelphia Detention Center violated Allen's rights under the IADA. Allen requested and received an extension for his deadline to respond until December 27, 1999. On December 22, 1999, Allen responded that the charges against him should be dismissed with prejudice.

### Discussion

The IADA governs the transfer of a prisoner-defendant from a state with custody over the prisoner ("sending state") to a state in which new charges are pending ("receiving state").[3] See 18 U.S.C.App. 2, § 2 Art. I. After the transfer from the sending state to the receiving state, the IADA requires that all charges in the receiving state must be completely resolved before the prisoner-defendant is returned to the sending state:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C.App. 2, § 2 Art. IV(e). Under Section 2, Article IV(e), of the IADA, if the defendant is returned to the sending state while charges in the receiving state remain unresolved, the charges in the receiving state must be dismissed with prejudice. See id.

■ Although Article IV(e) requires that the new charges against a prisoner-defendant be dismissed with prejudice after a violation of the IADA, a 1988 amendment to the IADA permits a court to dismiss the new charges without prejudice after an improper transfer in which the United States is the receiving state. See Anti–Drug Act, Pub L.100–690, 1988 U.S.Code Cong. & Admin. News (102 Stat. 4403)(codified as 18 U.S.C.App. 2, § 9). The amendment is codified in Section 9 of the IADA, which states in pertinent part:

> Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State—
>
> (1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice.

Id. Therefore, if a transfer of a prisoner-defendant violates the IADA and the receiving state in that transfer is the United States, a court must consider the following three factors in determining whether to dismiss the federal charges with or without prejudice: (1) the seriousness of the offense, (2) the facts and circumstances of the case which led to the dismissal, and (3) the impact of a reprosecution on the ad-

---

3. Under the IADA, the United States falls within the definition of a "state." See U.S.C.App. 2, § 2 Art. II(a). Even if the federal court in which the new charges are brought is in the same state as the sending state, the IADA governs the transfer of that prisoner-defendant to the federal court. See, e.g., United States v. Sorrell, 413 F.Supp. 138 (E.D.Pa.1976), aff'd en banc, 562 F.2d 227 (3d Cir.1977).

ministration of the agreement on detainers and on the administration of justice.

■ Both the United States and Allen agree that (1) the United States was the receiving state in the November 9, 1999 transfer of Allen, (2) Allen did ·not waive his right to remain in federal custody under the IADA, (3) the post-arraignment transfer of Allen from federal custody back to state custody before the resolution of the new federal charges violated the IADA, and (4) because of the violation, the IADA requires that the federal charges against Allen be dismissed. Therefore, the only issue before me is whether the federal charges against Allen should be dismissed with or without prejudice under Section 9(1) of the IADA. In determining whether to dismiss the federal charges against Allen with or without prejudice, I must apply the three factors of Section 9(1) of the IADA: (1) the seriousness of the offense; (2) the facts and· circumstances of the case which led to the dismissal; and (3) the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice.

*(1) Seriousness of the Offense*

In analyzing the seriousness of the offense, courts have looked at the conduct charged against the prisoner-defendant and the potential sentence of the charges in the receiving state. *See, e.g., United States v. Kurt,* 945 F.2d 248 (9th Cir.1991); *United States v. Iwuamadi,* 716 F.Supp. 420, 425 (D.Neb.1989). The United States contends that the extensiveness and duration of the conduct indicate the seriousness of the offenses charged. According to the United States, Allen is charged with conspiring to pass more than eighty bad checks that were drawn on more than twenty different accounts over the course of a year. Moreover, Allen ·is charged with fourteen counts of theft of government property for passing and aiding and abetting the passing of bad checks at a United States Post Office.

Additionally, the United States argues that the potential sentence demonstrates the seriousness of the charges against Allen. Allen faces a maximum statutory sentence of 19 years in prison and a fine of $1,650,000. Under the Sentencing Guidelines, 28 U.S.C. Section 994 ("USSG"), Allen faces a low-end sentencing range of 18 to 24 months, without information on or calculation of his criminal history. If Allen's criminal history is extensive, as claimed by the United States, this low-end sentence range could double. *See* USSG §§ 4A1, 4B1.

Allen contends that the seriousness of the offenses is a relative concept and should be compared with "the charges routinely lodged against defendants in federal court such as weapons violations, drug law violations, racketeering and major frauds." (Def. Response to Government's Motion, at 9.) Allen asserts that, when compared to such crimes, the charges against him are "not especially serious." *Id.*

Because (1) the charges against Allen involve offenses of considerable planning, (2) the alleged conspiracy lasted for more than a year, and (3) the potential sentence includes substantial imprisonment, I find that the factor of seriousness of the offenses charged against Allen weighs in favor of dismissal without prejudice.

*(2) Facts and circumstances of the case which led to the dismissal*

In analyzing the facts and circumstances which led to the dismissal of charges under the IADA, courts have looked at the specific cause of the IADA violation and for an improper motive of the prosecution. *See, e.g., United States v. Kurt,* 945 F.2d at 253; *United States v. Iwuamadi,* 716 F.Supp. at 426. The United States first contends that the violation resulted from an inadvertent error by a Deputy Marshal of the United States Marshal Service. According to Allen, the transcript of the arraignment reveals that (1) Magistrate Judge Smith and the Assistant United

States Attorney understood that the IADA required that Allen remain in federal custody until the resolution of the federal charges, (2) they agreed that Allen be returned to state custody, and (3) the Marshal Service acted under an implied authorization by Judge Smith to return Allen to custody. In its reply brief, the United States claims that the colloquy between Judge Smith, the Assistant United States Attorney, and Allen's counsel evinces a confusion at the arraignment and that it does not show an improper motive by the United States.

A review of the transcript of the colloquy among Judge Smith, the Assistant United States Attorney, and Allen's counsel reflects confusion regarding the impact of Allen's refusal to waive his rights under the IADA. The violation of the IADA resulted from this confusion. The Assistant United States Attorney expressed a desire to comply with the requirements of the IADA and the United States sought to remedy the violation within approximately one week of when it occurred. There is no evidence of an improper motive to disregard Allen's rights under the IADA. Therefore, I find that the facts and circumstances of the case which led to the dismissal of Allen's charges weigh in favor of dismissal without prejudice.

(3) *The impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice*

In analyzing the impact of reprosecution on the administration of the IADA and on the administration of justice, courts have considered whether the prosecution had an improper motive to violate the IADA and whether the violation prejudiced the prisoner-defendant in any way. *See id.* at 253–54; *United States v. Iwuamadi,* 716 F.Supp. at 426–27. The United States contends that reprosecuting Allen would not adversely impact the administration of the IADA because the violation occurred from an inadvertent error. Furthermore,

it alleges that Allen was not prejudiced by the violation. For example, it asserts that Allen was in close proximity to his attorney while he was improperly in state custody.

Allen contends that the administration of the IADA would be better served by dismissing the charges with prejudice. According to Allen, the violation was not a result of an inadvertent error, but rather a "cavalier disregard of the defendant's rights under the IADA." (Def. Response to Government's Motion, at 10.) Allen claims that dismissal with prejudice of the charges against him would deter future violations of the IADA. Therefore, the court should "send[ ] a clear message to all those responsible for the [IADA] violations" by dismissing the charges against Allen with prejudice.

Furthermore, he asserts that dismissing the charges against Allen with prejudice would not offend the administration of justice. He states that (1) he has already been successfully prosecuted in state court for some of the conduct alleged in the federal indictment, and (2) the amount of money involved in the federal charges is small. Therefore, Allen contends that the impact on the administration of justice weighs in favor of dismissal of the charges with prejudice.

In its reply, the United States contends that the federal indictment against Allen charges that he was part of a conspiracy to pass more than 80 bad checks and that the state charge for which he is currently imprisoned constitutes just one of those checks. Therefore, the administration of justice would be better served by dismissing the charges without prejudice.

Because (1) the violation was not a result of an improper motive of the United States to violate the IADA and (2) Allen does not contend that he was prejudiced by the violation, I find that the factor of the impact of reprosecution on the administration of the agreement on detainers and on the administration of justice weighs

in favor of dismissal of the charges against Allen without prejudice.

***Conclusion***

I concluded that the three factors listed in Section 9(1) of the IADA weigh in favor of the dismissal of the federal charges against Allen without prejudice. Therefore, on December 29, 1999, the federal charges against Warren Allen in Criminal Action No. 99–684–2 were dismissed without prejudice.