**UNITED STATES of America,**
**Plaintiff,**

v.

**Willie SMALL, Dachaun Davis, Keyonna Davis, Alvin Green, Theolian Lloyd, Curtis Hawkins, Zebedee Hall, James Starkey, Edward Palmer, Frederic Williams, Herbert Lewis, Jr., Angela Brewer, Daniel McIntyre, Jeff**

Abreu, Max Cooper, George Murray, Ernest Gaddis, Victor Mendinghall, Sammy Woods, Ronald Clark, Bridget Johnson, Timothy Chandler, Carlos Johnson, Dwayne Van Dyke, Thurman McKnight, Charles Young, Brian Harris, Dayna Drew, and Tommy Jones, Defendants.

No. 01–CR–214–D.

United States District Court,
D. Colorado.

July 15, 2002.

Kathleen Melissa Tafoya, U.S. Attorney's Office, Denver, CO, for U.S.

Matthew C. Golla, Fed. Public Defenders Office, Denver, CO, for Willie James Small.

Michael J. Norton, Burns, Figa & Will, P.C., Englewood, CO, for Dachaun Davis.

Richard James Banta, Denver, CO, for Alvin Green.

John S. Tatum, John S. Tatum, PC, Aurora, CA, for Curtis Hawkins.

R. Scott Reisch, Denver, CO, for Zebedee Hall.

Jonathan S. Willett, Willett & Mestas, LLC, Denver, CO, for James Starkey.

Kirkland Leonard Brush, Fort Collins, CO, Lynn Anne Pierce, Butler, Landrum & Pierce, P.C., Lakewood, CO, for Fredric Williams.

Clifford J. Barnard, Boulder, CO, for Herbert Lewis, Jr.

John Andrew Chanin, Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, CO, for Edward Palmer.

Jeffrey S. Pagliuca, Holland & Pagliuca, PC, Denver, CO, for Angela Brewer.

Michael Gary Root, Denver, CO, for Daniel McIntyre.

Richard N. Stuckey, Richard N. Stuckey, P.C., Denver, CO, for Jeff Abreu.

David Barry Savitz, Denver, CO, Mark Samuel Rubinstein, Mark S. Rubinstein, PC, Denver, CO, for Max Cooper.

Wade H. Eldridge aka George Murray, Wade H. Eldridge, P.C., Denver, CO, for George Melvin Murray.

M. David Lindsey, Denver, CO, for Ernest Gaddis.

Darren R. Cantor, Darren R. Cantor, P.C., Denver, CO, for Victor Mendeinghall.

Kerry Steven Hada, Kerry S. Hada, PC, Englewood, CO, for Sammy Lee Woods.

Martha Horwitz Eskesen aka Ronald Clark, Treece, Alfrey, Musat & Bosworth, P.C., Denver, CO, for Ronald Dennis Clark.

John F. Sullivan, III, Denver, CO, for Bridget Johnson.

Edward A. Pluss, Denver, CO, for Timothy Chandler.

Christopher Bradley Calbo, Arvada, CO, for Carlos Johnson.

Dennis W. Hartley, Dennis W. Hartley, P.C., Colorado Springs, CO, for Dwayne Vandyke.

Mitchell Baker, Mitchell Baker & Associates, Denver, CO, for Thurman Douglas McKnight.

Christopher R. Decker, Decker & DeChar, LLC, Denver, CO, for Charles Young.

William Michael Whelan, Jr., Boulder, CO, for Brian Harris.

Jeffrey Richard Edelman, Jeffery R. Edelman, PC, Parker, CO, for Dayne Drew.

Robert T. McAllister, Robert T. McAllister, PC, Denver, CO, for Tommy Jones.

Wazir-Ali Muham Al-Haqq, Denver, CO, Wendelin Williams DeLoach, DeLoach Law Offices, Aurora, CO, for Dawan Eugene Smith.

Alaurice Marie Tafoya, Denver, CO, for Angela Hernandez.

Robert Seldis Berger, Robert S. Berger, P.C., Denver, CO, for Sandra Davis.

## ORDER

DANIEL, District Judge.

THIS MATTER is before the Court on Defendant Ronald Clark's Motion for Dismissal for Violation of the Interstate Agreement on Detainers Act filed March 15, 2002. The Court also considered the Government's Motion for Stay of Execution of Court's Order Regarding Interstate Agreement on Detainers filed May 13, 2002.

For the reasons stated on the record at the April 19, 2002, hearing and as set forth below, Defendant's motion is **GRANTED**

and the Indictment and Superseding Indictment are **DISMISSED WITHOUT PREJUDICE** as to Defendant Ronald Clark. Further, the Government's motion for stay is **DENIED.**

## I. GENERAL BACKGROUND

### A. INTRODUCTION

Ronald Clark ("Defendant") is charged in six counts of the eighty-one count Superseding Indictment with various offenses including conspiracy to distribute more than 50 grams of crack cocaine. Defendant has moved to dismiss the Indictment and Superseding Indictment ("Indictments") with prejudice for violations of the Interstate Agreement on Detainers Act, § 2, 18 U.S.C. app. 2 ("IAD"). The Government contends that the IAD is not applicable to Defendant and, even assuming that it is, there has been no violation of its provisions. The Government also argues that if a violation of the IAD has occurred, dismissal of the Indictments should be *without* prejudice based on the facts of this case.

### B. INTERSTATE AGREEMENT ON DETAINERS ACT

The IAD is a compact entered into by forty-eight states, the United States, and the District of Columbia which enables participating states to gain temporary custody of prisoners incarcerated in another jurisdiction in order to try the prisoner on pending criminal charges. *See generally United States v. Mauro,* 436 U.S. 340, 349–53, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *New York v. Hill,* 528 U.S. 110, 111, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). The IAD provides two different procedures whereby a prisoner may be taken from his current custodian in the "sending State" and transferred to the "receiving State," which is where charges are pending and trial is to be had on the criminal indictment or information.[1] *See* 18 U.S.C. app. 2 § 2, art. II.

First, under Article IV, if the "receiving State" has filed a detainer and has made a written request for temporary custody of the defendant, *i.e.,* filed a writ of habeas corpus *ad prosequendum,* the IAD gives the "receiving State" the right to obtain a prisoner for purposes of trial.[2] Further, Article IV provides that the receiving State must: (a) try the prisoner within 120 days of his arrival, and (b) not return the prisoner to his original place of imprisonment prior to that trial.[3] 18 U.S.C. app. 2

---

1. The United States is deemed a "State" under the IAD. *Mauro,* 436 U.S. at 354 n. 21, 98 S.Ct. 1834.

2. A writ of habeas corpus *ad prosequendum* is issued by a federal court on the government's motion and secures for the purposes of trial the presence of a defendant in a criminal case who is in another state's custody. *Mauro,* 436 U.S. at 358, 98 S.Ct. 1834; *Ex Parte Bollman,* 8 U.S. 75, 4 Cranch 75, 2 L.Ed. 554 (1807).

3. Article IV(a), provides that:

The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated[.]

Further, Article IV(c) specifies that the receiving State shall begin the prisoner's "trial ... within one hundred and twenty days of the arrival of the prisoner in the receiving State."

Finally, Article IV(e), provides that:

If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall

§ 2, art. IV(c) and art. IV(e); *see also Alabama v. Bozeman,* 533 U.S. 146, 151, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001). Under the second procedure provided for in the IAD, if the "receiving State" has filed a detainer against a defendant-prisoner, Article III provides that the defendant-prisoner has the right to request a final disposition of all untried indictments, informations, or complaints such that the "receiving State" must try the prisoner within 180 days of his request.[4] 18 U.S.C. app. 2 § 2, art. III(a). Defendant has moved for dismissal of the Indictments under both Article III and Article IV of the IAD.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On February 6, 1996, Defendant was sentenced by the Denver District Court in Criminal Action No. 96–CR–137. In February 2001, Defendant was transferred from a Department of Corrections facility to continue serving his sentence at the Williams Street Center halfway house. In June, 2001, Defendant was returned to the Denver County Jail for violations of the Rules and Policies of Williams Street Center. The United States Marshals Service ("U.S. Marshals Service") filed a detainer against Defendant with the Denver County Jail on June 19, 2001. On June 26 and 27, 2001, the Government filed a writ of habeas corpus *ad prosequendum* against Defendant seeking to have him present for an initial appearance before this Court. On June 29, 2001, United States Magistrate

Judge O. Edward Schlatter granted the writ and ordered it returnable on July 10, 2001, and Defendant made his initial appearance in this Court on that date. Defendant was returned to the Denver County Jail the same day.

## III. LEGAL ANALYSIS

### A. THE APPLICABILITY OF THE IAD TO DEFENDANT CLARK

■ The Defendant argues that the IAD is applicable because the Government filed a detainer and obtained Defendant's custody by means of a writ of habeas corpus *ad prosequendum.* Although the Government acknowledges that it filed a detainer and obtained Defendant's custody by means of a writ of habeas corpus *ad prosequendum,* the Government argues that the IAD is not applicable because: (1) the incorrect detainer form was used; (2) the Denver County Jail is not a "State" as defined by the IAD; and/or (3) the Defendant had not yet "entered upon his term of imprisonment."

First, the Government asserts that the U.S. Marshals Service used the incorrect detainer form in this case. The U.S. Marshals Service used a detainer form for prisoners who are not serving a sentence of imprisonment at the time the detainer is lodged. Def.'s Mot. to Dismiss, Ex. A. Since Defendant was serving a sentence of imprisonment when the detainer was

---

enter an order dismissing the same with prejudice.

4. Article III(a) of the IAD provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to

trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: Provided, That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

lodged, the Government asserts that the U.S. Marshals Service should have used a different detainer form for prisoners who are serving a sentence.

I reject the Government's argument as meritless. The use of the correct or incorrect detainer form by the U.S. Marshals Service does not determine the applicability of the IAD in this or any other case.[5] To hold otherwise would make the applicability of the IAD wholly contingent upon the fortuitous selection of a particular piece of paper by a U.S. Marshals Service employee. The arbitrariness of such a holding would result in inconsistent and incongruous applications of the IAD. Rather, to trigger the protections of the IAD, a criminal justice agency must lodge a detainer against a defendant and the Government must issue a writ for that defendant's appearance.[6] That is exactly what transpired in this case.

■ Next, the Government asserts that the County of Denver is not an official party state under the IAD and the IAD is therefore inapplicable to Defendant. I reject this argument as well. The U.S. Marshals Service filed a detainer with the official that had custody of Defendant, the Denver County Jail, in the party state, Colorado. The Government can neither dispute the fact that the Denver County Jail had custody of Defendant nor that Colorado is a "party state" under the IAD.

■ Finally, the Government relies upon *United States v. Wilson*, 719 F.2d 1491, 1495 (10th Cir.1983), to argue that the IAD does not apply to Defendant Clark because he had not "entered upon his term of imprisonment" in a permanent

correctional facility. The Government asserts that when it gained custody of Defendant on July 10, 2001, the Defendant had not "entered upon his term of imprisonment" because he was merely temporarily housed at the Denver County Jail while he awaited transportation to a Department of Corrections facility where he was to serve the remainder of his sentence. The Government argues that under both Article III—at issue in *Wilson* —and Article IV— the part of the statute controlling here, a Defendant has not "entered upon a term of imprisonment" until he is incarcerated in a permanent correctional facility. Since Defendant Clark was located at a temporary correctional facility awaiting transfer to a permanent correctional facility when the detainer was filed, the Government asserts that the IAD is not applicable to Defendant Clark.

I disagree with the Government's assertion that *Wilson* is apposite to this case. Aside from the factual distinctions between *Wilson* and the case at bar, the *Wilson* decision is premised on that court's interpretation of Article III while my decision in this case is based on Article IV. For both Article III and Article IV, Congress clearly wished to deter the unproductive transfer of prisoners from a correctional facility. *See Wilson*, 719 F.2d at 1494. Congress did not want prisoners to "have programs of treatment and rehabilitation obstructed by numerous absences in connection with successive proceedings related to pending charges in another jurisdiction." *Id.* (*citing United States v. Roberts*, 548 F.2d 665, 670–71 (6th Cir.1977)). But while the IAD has a general purpose, the

---

**5.** Although the IAD does not define the term "detainer", the Supreme Court defines "detainer" as "a request filed by a criminal justice agency in which a prisoner is incarcerated, which asks the institution either to hold the prisoner for the agency or to notify the agency when the release of the prisoner is imminent." *Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985).

**6.** The detainer must be lodged with "the official in the party state that has custody of the prisoner." *Johnson v. People,* 939 P.2d 817, 820 (Colo.1997).

circumstances covered by Article III and Article IV differ dramatically.

Specifically, Article III commands that if a prisoner files written notice demanding final disposition of charges in a receiving jurisdiction that lodged a detainer against him, the prisoner must be transferred and tried within 180 days. Thus, Article III affords a prisoner the opportunity to resolve detainers filed against him by other jurisdictions so that he may proceed with his rehabilitation and minimize the interruption of his current prison term. In *Wilson*, the court found that under Article III, the 180–day time period for bringing the defendant to trial did not begin running, and thus the IAD was not applicable, until the defendant was transferred to his permanent correctional facility. 719 F.2d at 1495.

Article IV, in contrast, stipulates that if the receiving jurisdiction on its own initiative transfers a prisoner into its custody, it must initiate a trial against the prisoner within 120 days. Further, the indictment, information, or complaint will be dismissed if the prisoner is returned to the sending jurisdiction before that trial.

The critical distinction between Article III and Article IV is the triggering mechanism. Article III is only applicable once the prisoner appropriately requests a final disposition in the receiving jurisdiction.[7] Article IV, however, does not require the prisoner to make such a request. Article IV is applicable automatically once the prisoner is transferred to the receiving jurisdiction.

The issue in this case is whether under Article IV, I should distinguish, as *Wilson* did for the purposes of Article III, between temporary and permanent correctional custody for a sentenced prisoner in establishing the point when the IAD's protections are triggered. If I were to adopt a *Wilson* rule and apply it to an Article IV analysis, a receiving jurisdiction that transfers a prisoner from a temporary facility would not be subject to the requirements of Article IV. Consequently, the receiving jurisdiction would not have to hold a trial within 120 days of the prisoner's transfer, nor would the jurisdiction suffer prejudicial dismissal of its case if the prisoner were returned to the sending jurisdiction before trial. Pursuant to *Wilson*, this same prisoner also could not file notice to force the receiving jurisdiction's compliance with the 180–day trial initiation requirement of Article III because he had not "entered upon a term of imprisonment." Thus, extension of the *Wilson* rule to Article IV would leave prisoners incarcerated in a temporary facility without recourse; these prisoners would be denied any ability—either through their own efforts under Article III, or through the protections of Article IV that are automatically activated after the prisoner's transfer—to minimize the disruptions of their treatment and rehabilitation in the sending jurisdiction or to expedite the orderly disposition of all outstanding charges against

---

7. Article III(a) and (b) provide, in pertinent part:

> (a) [...] The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of

the prisoner, and any decision of the State parole agency relating to the prisoner.

> (b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

them. Congress's intent, reflected in the IAD, consequently would be vitiated.

I cannot accept these conclusions as consistent with Congress's recognized intent behind the IAD. To hold that a sentenced prisoner's stay in a temporary facility, no matter how lengthy, does not trigger the IAD's protections under Article IV is inconsistent with the purpose of the IAD. I hold that the protections of the IAD have been triggered here, and I conclude that the IAD applies to Defendant. My interpretation of the applicability of the IAD to this Defendant comports with the purposes of the IAD in preventing the interference with institutional care and rehabilitation and encouraging the expeditious and orderly disposition of all outstanding charges against a prisoner serving a sentence.[8] 18 U.S.C. app. 2 § 2, art. I; *see also* 18 U.S.C. app. 2 § 2, art. IX (the IAD shall be liberally construed so as to effectuate its purposes).

### B. DISMISSAL OF THE INDICTMENTS UNDER 18 U.S.C. APP. 2 § 2, ART. IV(E)

Having determined that the IAD is applicable to Defendant Clark, I must now determine if dismissal of the Indictments is appropriate in this case. Defendant Clark asserts that the Indictments must be dismissed because the Government violated Article IV(e) of the IAD by lodging a detainer against him, taking him from state custody under a writ of habeas corpus *ad prosequendum* for his initial appearance in this Court, and returning him to state custody that same day. Article IV(e) of the IAD, the anti-shuttling directive, states:

If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. app. 2 § 2, art. IV(e). Defendant claims that the express terms of the IAD and the Supreme Court's decision in *Alabama v. Bozeman* support dismissal in this case because he was taken from the Denver County Jail on July 10, 2001, pursuant to a detainer and writ and returned to that facility the same day before a trial was held on the federal charges.

The Government argues that there was no violation of the IAD because the Defendant was returned to the Denver County Jail as a *federal* prisoner not as a *state* prisoner and has remained in federal custody ever since. The confusion in this case stems from the fact that the Denver County Jail houses both federal and state prisoners. Accordingly, it is not enough for me to conclude that Defendant was "returned to the original place of his imprisonment" on July 10, 2001, to find a violation of the IAD. Rather, I must determine Defendant's status when he was returned to that facility, i.e., whether Defendant was in state or federal custody.

Article V(h) of the IAD provides that:

"[f]rom the time that a party State receives custody of a prisoner pursuant to this agreement until such prisoner is

---

**8.** That Defendant Clark in particular must be afforded Article IV(e)'s safeguards is even more certain than the general conclusions I have drawn above with respect to prisoners awaiting their initial transfer to a permanent facility. This is because of the peculiar facts of the instant case; Defendant Clark *had already been housed* in a permanent facility of the sending jurisdiction, was subsequently transferred to a halfway house, and was then sent to a temporary correctional facility awaiting re-transfer to a permanent correctional institution. As such, one can hardly deny that Defendant Clark met *Wilson's* terms of having "entered upon a term of imprisonment."

returned to the territory and custody of the sending State, the [receiving] State . . . shall be responsible for the prisoner and shall also pay all costs of transporting, caring for, keeping, and returning the prisoner."

If the "receiving State," the United States, paid all costs of caring for and keeping Defendant after he was returned to the Denver County Jail on July 10, 2001, it follows that Defendant was in *federal* custody, not state custody.

However, the supplemental briefing ordered by the Court and filed subsequent to the April 19, 2002, hearing indicates that the federal government did not pay for Defendant's confinement after he was returned on July 10, 2001. *See* Affidavit of David Floyd attached to the Gov't's Submission Regarding Interstate Agreement on Detainers filed April 25, 2002. Since the State of Colorado paid all costs of caring for and keeping Defendant upon his return to the Denver County Jail, I find that Defendant was returned to that facility in *state* custody. Further, since the U.S. Marshals Service "returned" Defendant to his "original place of imprisonment" before a trial was held on his federal charges, Article IV(e) of the IAD was violated and the Indictments must be dismissed.[9] The only issue that remains for determination is whether the federal charges against Defendant should be dismissed with or without prejudice under Section 9(1) of the IAD.

## C. DISMISSAL UNDER 18 U.S.C. APP. 2 § 9

[5] Although Article IV(e) requires that the new charges against a prisoner-defendant be dismissed with prejudice for violations of the provision, § 9 permits a court to dismiss the new charges without prejudice after an improper transfer in which the United States is the receiving state. Section 9 of the IAD, states in pertinent part:

> Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State—(1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice[.]

Therefore, I must consider the foregoing three factors in determining whether to dismiss the federal charges with or without prejudice.

### (i.) THE SERIOUSNESS OF THE OFFENSE

In analyzing the seriousness of the offense, courts have looked to the conduct charged against the prisoner-defendant and the potential sentence of the charge in the receiving state. *See, e.g., United States v. Kurt,* 945 F.2d 248 (9th Cir.1991); *United States v. Allen,* 80 F.Supp.2d 472, 474–75 (E.D.Pa.2000); *United States v. Iwuamadi,* 716 F.Supp. 420, 425 (D.Neb. 1989).

Here, Defendant is charged in eight counts of the eighty-one count Superseding Indictment. He is charged in Count One with conspiracy to distribute and possession with intent to distribute more than 50 grams of crack cocaine, and aiding and abetting the same in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), 846 and 18 U.S.C. § 2. He is charged in Counts Twenty–Six and Twenty–Eight with distribution

---

9. Because I find that a violation has occurred under Article IV(e) warranting dismissal of the Indictments, I will not address Defendant's remaining arguments under Article III.

and possession with intent to distribute more than 5 grams of crack cocaine, and aiding and abetting same in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii) and 18 U.S.C. § 2. He is charged in Count Twenty–Seven with use of a communication facility in violation of 21 U.S.C § 843(b) and 18 U.S.C. § 2. He is charged in Count Twenty–Nine with possession with intent to distribute a quantity of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) and 18 U.S.C. § 2. He is also named in a forfeiture count (Count Eighty). Clearly, Defendant is charged with very serious crimes that could result in a substantial prison sentence. Accordingly, I am persuaded that this factor counsels for dismissal without prejudice.

### (ii.) THE FACTS AND CIRCUMSTANCES OF THE CASE WHICH LED TO THE DISMISSAL

In analyzing this factor, courts generally look to the specific cause of the IAD violation and consider the Government's actions with respect to the defendant's rights under the IAD. *Kurt,* 945 F.2d at 253; *Allen,* 80 F.Supp.2d at 475; *Iwuamadi,* 716 F.Supp. at 426. In this case, Defendant's IAD rights were violated as a result of the procedures used by the U.S. Marshals Service. The Government became aware very early on in this case that the IAD might be applicable to Defendant.[10] Further, the Government immediately advised Defendant's counsel of the possible application of the IAD and the Government argued to the Magistrate Judge considering the matter that Defendant should not be returned to state custody because of the *possibility* that the IAD might apply. *See* Gov't's Resp. to Def. Clark's Mot. for Dismissal for Violation of the IAD, pp. 7–8. In this case, I find the reason for returning Defendant to Denver County Jail as a state

prisoner was an unfortunate administrative oversight. This is not an instance of prosecutorial bad faith and there is no significant evidence of a pattern of neglect or intentional violation of the IAD. Therefore, I conclude that this factor also favors dismissal without prejudice.

### (iii.) THE IMPACT OF A REPROSECUTION ON THE ADMINISTRATION OF THE AGREEMENT ON DETAINERS AND ON THE ADMINISTRATION OF JUSTICE

In analyzing this factor, courts have considered whether the prosecution had an improper motive to violate the IAD and whether the violation prejudiced the defendant-prisoner in any way. *Kurt,* 945 F.2d at 253–54; *Iwuamadi,* 716 F.Supp. at 426– 427. Here, Defendant has completed his state sentence and, therefore, the reprosecution will not impact the administration of the IAD. However, Defendant alleges that he has been prejudiced by the delay in this case. He claims that the "delay of his speedy trial rights under the IAD interfered with (i.e., prevented) his education and rehabilitation." *See* Def.'s Resp. to the Gov't's Submission Regarding Interstate Agreement on Detainers, p. 12. However, Defendant did not provide any additional factual information beyond that conclusory statement to demonstrate prejudice. Because there remains a factual dispute as to whether Defendant was prejudiced, I find that this factor neither counsels for nor against dismissal without prejudice.

### IV. CONCLUSION

I find that the IAD violations described in this Order require dismissal of the Indictments against Defendant Ronald Clark. Further, my analysis of the three

---

**10.** At that time, counsel for Defendant maintained that the IAD was *not* applicable in this case.

factors listed in 18 U.S.C. app. 2 § 9 weigh in favor of the dismissal of the federal charges against Defendant Clark without prejudice. Accordingly, it is

ORDERED that Defendant Ronald Clark's Motion for Dismissal for Violation of the Interstate Agreement on Detainers Act filed March 15, 2002 is **GRANTED** and the Indictment and Superseding Indictment are **DISMISSED WITHOUT PREJUDICE** as to Defendant Ronald Clark. It is

FURTHER ORDERED that the Government's Motion for Stay of Execution of Court's Order Regarding Interstate Agreement on Detainers filed May 13, 2002, is **DENIED.**